UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ROCKET FUEL, INC. SECURITIES LITIGATION | Case No. 14-cv-3998-PJH<br><br>**ORDER RE MOTIONS TO DISMISS** |

On September 16, 2015, defendants' motions to dismiss came on for hearing before this court. Lead plaintiffs Oklahoma Firefighters Pension and Retirement System, Browder Capital, LLC, and Patrick Browder ("plaintiffs") appeared through their counsel, Ramzi Abadou, Laurence King, and Mario Choi. Defendants Rocket Fuel Inc., George H. John, J. Peter Bardwick, Susan L. Bostrom, Ronald E.F. Codd, William Ericson, Richard Frankel, John Gardner, Clark Kokich, and Monte Zweben (collectively, the "Rocket Fuel defendants") appeared through their counsel, Nina Locker and Rod Strickland. Defendants Credit Suisse Securities, Citigroup Global Markets, Needham & Company, Oppenheimer & Co., Piper Jaffray & Co., BMO Capital Markets, LUMA Securities, and Goldman Sachs (collectively, the "Underwriter defendants") appeared through their counsel, Robert Varian. Having read the papers filed in conjunction with the motions and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

Defendant Rocket Fuel is a company that offers advertising solutions over web, mobile, video, and social media channels, and claims that its technology is better than

its competitors' at detecting "digital ad fraud" – including the viewing of ads by computer programs, such as "bots," rather than by real people. In simple terms, the presence of "bots" can skew the number of actual views (or "impressions") that an ad receives, resulting in advertisers paying for "views" even though the ads are not seen by real people. Rocket Fuel's technology is designed to filter out those "bot views."

Plaintiffs allege that Rocket Fuel and its officers made false and misleading statements (and omissions) regarding the technology's effectiveness, which artificially inflated its stock price. Plaintiffs also allege that defendants made a secondary stock offering that was designed to allow company insiders to unload their stock at artificially inflated prices.

The nature of those allegedly false/misleading statements is more specifically discussed below, but in general, plaintiffs claim that defendants overstated the effectiveness of their product and failed to disclose that bots were actually causing some Rocket Fuel customers to stop using its service. Plaintiffs also allege that certain false/misleading statements were made in connection with two stock offerings – the initial public offering and the secondary public offering. Despite knowing of the extent of the bot problem, defendants allegedly continued to tout their technology's capabilities, until ultimately being forced to announce poor earnings performances and to admit that customers actually were taking their business elsewhere because of the bot problem. These announcements caused Rocket Fuel's stock price to drop, precipitating this lawsuit.

Two cases were filed in this district, and the cases were ultimately related and consolidated, and a lead plaintiff was appointed after various parties filed motions to be appointed as such. An "institutional investor group" was appointed lead plaintiff, consisting of the Oklahoma Firefighters Pension and Retirement System, Browder Capital, and Patrick Browder.

Then, a consolidated class action complaint was filed on February 27, 2015. The complaint was brought against four sets of defendants:

2

(1) the "Company defendant" (Rocket Fuel itself),

(2) the "Insider defendants" (CEO George H. John, President Richard Frankel, and CFO J. Peter Bardwick),

(3) the "Director defendants" (Susan Bostrom, Ronald Codd, William Ericson, John Gardner, Clark Kokich, and Monte Zweben, all of whom were on Rocket Fuel's board of directors during the class period), and

(4) the "Underwriter defendants" (Credit Suisse Securities, Citigroup Global Markets, Needham & Company, Oppenheimer & Co., Piper Jaffray & Co., BMO Capital Markets, LUMA Securities, and Goldman Sachs).

The operative consolidated class action complaint asserts seven causes of action (labeled as "counts"):

(1) violation of section 10(b) of the Exchange Act, asserted against the Company and the Insider defendants,

(2) violation of section 20(a) of the Exchange Act, asserted against the Insider defendants,

(3) violation of section 20A of the Exchange Act, asserted against the Insider defendants,

(4) violation of section 11 of the Securities Act, in connection with the IPO, asserted against all defendants other than Goldman Sachs,

(5) violation of the Securities Act in connection with the secondary public offering, asserted against all defendants other than LUMA,

(6) violation of section 12(a)(2) of the Securities Act in connection with the secondary public offering, asserted against the Company and the Underwriter defendants other than LUMA, and

(7) violation of section 15 of the Securities Act, asserted against the Insider defendants and the Director defendants.

There are now two pending motions to dismiss – one brought by the Company, the Insider defendants, and the Director defendants (collectively referred to as the "Rocket

1  Fuel defendants"), and one brought by the Underwriter defendants.

## DISCUSSION

A. Legal Standard

    1. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without

prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

In addition, while the court generally may not consider material outside the pleadings when resolving a motion to dismiss for failure to state a claim, the court may consider matters that are properly the subject of judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims. See No. 84 Employer–Teamster Joint Counsel Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

2. Federal Rule of Civil Procedure 9(b)

Generally, plaintiffs in federal court are required to give a short, plain statement of the claim sufficient to put the defendants on notice. Fed. R. Civ. P. 8. In actions alleging fraud, however, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-49 (9th Cir. 1994). Because the plaintiff must set forth what is false or misleading about a particular statement, he must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983, 992-93 (9th Cir. 1999).

3. Claims under the 1934 Securities Exchange Act

Section 10(b) of the Securities Exchange Act of 1934 provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security

5

1  registered on a national securities exchange or any security not so registered, any
2  manipulative or deceptive device or contrivance in contravention of such rules and
3  regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).

Rule 10b-5 makes it unlawful for any person to use interstate commerce:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In order to state a claim under § 10(b) of the 1934 Act and Rule 10b-5, a plaintiff must allege: (1) the use or employment of a manipulative or deceptive device or contrivance; (2) scienter, i.e., wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to as "transaction causation;" (5) economic loss; and (6) loss causation, i.e., a causal connection between the manipulative or deceptive device or contrivance and the loss. Simpson v. AOL Time Warner, 452 F.3d 1040, 1047 (9th Cir. 2006); see also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). The misstatement or omission complained of must have been misleading; in the case of an omission, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic, Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988).

4. The Private Securities Litigation Reform Act

It has long been established that claims brought under Rule 10b-5 and § 10(b) must meet the particularity requirements of Rule 9(b). See In re Daou Sys. Inc. Sec. Litig., 411 F.3d 1006, 1014 (9th Cir. 2005). In addition, the enactment of the Private Securities Litigation Reform Act ("PSLRA") in 1995 altered pleading requirements for actions brought under the 1934 Exchange Act. Id.

The PSLRA was enacted to establish uniform and stringent pleading requirements

6

for securities fraud actions, and "to put an end to the practice of pleading 'fraud by hindsight.'" In re Silicon Graphics, 183 F.3d at 958. The PSLRA heightened the pleading requirements in private securities fraud litigation by requiring that the complaint plead both falsity and scienter with particularity. In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1084 (9th Cir. 2002). If the complaint does not satisfy these pleading requirements, the court, upon motion of the defendant, must dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A).

Under the PSLRA – whether alleging that a defendant "made an untrue statement of a material fact" or alleging that a defendant "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading" – the complaint must specify each statement alleged to have been false or misleading, specify the reason or reasons why each such statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u-4(b)(1). If the challenged statement is not false or misleading, it does not become actionable merely because it is incomplete. In re Vantive, 283 F.3d at 1085; Brody v. Transitional Hosp. Corp., 280 F.3d 997, 1006 (9th Cir. 2002).

In addition – whether alleging that a defendant "made an untrue statement of material fact" or alleging that a defendant "omitted to state a material fact" – the complaint must, with respect to each alleged act or omission, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In the Ninth Circuit, the required state of mind is "deliberate or conscious recklessness." In re Silicon Graphics, 183 F.3d at 979.

Because falsity and scienter in securities fraud cases are generally strongly inferred from the same set of facts, the Ninth Circuit has incorporated the falsity and scienter requirements into a single inquiry. No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Co., 320 F.3d 920, 932 (9th Cir. 2003). In addition, when considering whether plaintiffs have shown a strong inference of scienter,

7

"the district court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." Gompper v. VISX, Inc., 298 F.3d 893, 897 (9th Cir. 2002) (noting the "inevitable tension . . . between the customary latitude granted the plaintiff on a [12(b)(6)] motion to dismiss . . . and the heightened pleading standard set forth under the PSLRA). In other words, the court must consider all the allegations in their entirety in concluding whether, on balance, the complaint gives rise to the requisite inference of scienter. Id.

B.  Legal Analysis

The court will start by discussing the alleged false/misleading statements, which the Rocket Fuel defendants[1] have divided into four categories: (1) "factual statements regarding Rocket Fuel's efforts to combat bot fraud," (2) "positive statements regarding Rocket Fuel's technology," (3) "Rocket Fuel's forward-looking financial guidance," and (4) "product marketing statements made towards Rocket Fuel's customers." Dkt. 99 at 11. The court notes that plaintiffs have conceded that category (3) is no longer actionable, so only categories (1), (2), and (4) will be addressed in this order. See Dkt. 108 at 8, n. 5.

Plaintiffs appear to categorize the statements as follows: (1) "Rocket Fuel's statements regarding its unequivocal ability to combat bot fraud and fraudulent websites," (2) "risk factor statements," and (3) "Rocket Fuel's statements regarding its proprietary technology."

Both parties attempt some sleight of hand through their use of categories, so rather than adopting either party's categorization, the court will address the alleged false/misleading statements in chronological order, as they are presented in the complaint. The court also notes that a number of the allegations made in the complaint were not mentioned by plaintiffs in their papers.

---

[1] Because the Rocket Fuel defendants' motion addresses all of the alleged false/misleading statements, whereas the Underwriter defendants' motion is limited to statements made in registration statements, the court will use the Rocket Fuel defendants' framework for assessing the false/misleading statements.

8

1. IPO materials

The first set of actionable statements presented in the complaint comes from the IPO materials. Specifically, plaintiffs identify as false/misleading the statement that "if we fail to detect fraud . . . our reputation will suffer," the statement that the company used "proprietary technology to detect click fraud and block inventory that we know or suspect to be fraudulent," and the statement that the company delivers ad campaigns that are "effective and efficient" and "enables advertisers to efficiently connect with large audiences." Consolidated Complaint, ¶¶ 123-125.

Plaintiffs do not allege that any of these statements are false or misleading on their face, but instead argue that the first statement (the "if . . . then" statement) is misleading because the supposed hypothetical situation was already occurring, and that the latter two statements were misleading because they did not acknowledge that bot fraud was already negatively impacting the company.

Taking the latter two statements first, the court finds that no level of success is stated or implied by the statement that Rocket Fuel uses "proprietary technology to detect click fraud," or that its technology is "effective and efficient" and "enables advertisers to efficiently connect with large audiences." Saying that a company's technology is used to "detect click fraud" does not imply that it blocks all fraud, and saying that it delivers an "effective and efficient" service does not imply that there will never be any instances of fraud. Overall, the court finds that these statements are not actionable.

With respect to the statement that "if we fail to detect fraud . . . our reputation will suffer" (referred to in this order as "the 'if . . . then' statement"), the court finds that this statement similarly makes no implication of any specific level of success, and in fact does the opposite, warning readers that the technology may sometimes fail to detect fraud. The court finds that this statement is not actionable.

2. Third quarter 2013

Plaintiffs allege as false/misleading two statements made in the third quarter of 2013: (1) a website post on November 6, 2013, stating that Rocket Fuel "uses real-time

1  data points to recognize these bad actors and block them at the source," that it
2  "undermines fraudulent practices and makes sure con artists always leave empty-
3  handed" and is "able to identify and eliminate all threats before serving a single ad," and
4  (2) a press release from November 7, 2013 discussing Rocket Fuel's strong growth
5  (citing revenue figures for support) and repeating the risk disclosures from the IPO
6  materials (i.e., the "if . . . then" statement discussed in the previous section of this order).
7  Consolidated Complaint, ¶¶ 127-128.

8  Starting with the statements from the November 7 press release, the court has
9  already addressed the "if . . . then" statement, and found that it is not actionable.
10 Regarding the statements about Rocket Fuel's "strong growth," plaintiffs do not allege
11 that the cited revenue figures were false, but rather claim that the figures were misleading
12 in light of the actual threat of bot fraud.  Plaintiffs cannot use the threat of bot fraud to
13 cast every positive statement of Rocket Fuel's as misleading, so without more, the court
14 finds that the statements contained within the November 7, 2013 press release are not
15 actionable.

16 Regarding the November 6, 2013 website post, the Rocket Fuel defendants first
17 address the "bad actors" statement, arguing that the statement is an accurate description
18 of how the Rocket Fuel service works, and that plaintiffs offer no facts to contradict it.
19 The court finds that the statement does not imply anything about the effectiveness of the
20 approach, and merely describes the approach at a high level.  Thus, the "bad actors"
21 statement is not actionable.

22 However, the statements that Rocket Fuel is "able to identify and eliminate all
23 threats before serving a single ad" and that it "undermines fraudulent practices and
24 makes sure con artists always leave empty-handed" do indeed describe a specific level
25 of effectiveness.  The words "all" and "always" serve to distinguish these statements from
26 the remainder of the allegedly false/misleading statements contained in the complaint.

27 The Rocket Fuel defendants do not appear to defend the truth of these
28 statements, as their only response is to express skepticism that "a reasonable investor

10

would have found and relied upon this marketing statement as a guarantee that Rocket Fuel's technology prevented <u>literally every single instance of ad fraud</u> in the billions of impressions Rocket Fuel considered per day." Dkt. 99 at 19-20 (emphasis in original). In other words, the Rocket Fuel defendants suggest the statements were so over-the-top that no reasonable investor would have believed them. The court knows of no authority for the proposition that a statement can be so clearly false that it should not be considered false or misleading. The court also notes that the Rocket Fuel defendants attempt to characterize these statements as mere "product marketing statements," when they are more properly characterized as "factual statements regarding Rocket Fuel's efforts to combat bot fraud."

While the Rocket Fuel defendants make arguments regarding scienter and loss causation, as well as the identity of the speaker of these statements, those arguments will be addressed below. For now, the court finds that plaintiffs have adequately alleged that the "identify and eliminate all threats" statement and the "con artists always leave empty-handed" statements contained in the November 6, 2013 website posting are false or misleading.

3.     December 4, 2013 investor conference

The complaint alleges as false/misleading certain statements made by defendant Bardwick at a NASDAQ OMX Investor Program held on December 4, 2013. Specifically, Bardwick stated that Rocket Fuel had "proprietary technology for filtering for bots," that it "filtered for quality," and that "the advertisers and then certain players like us will continue to stay ahead of the people who are trying to make a quick buck." Consolidated Complaint, ¶¶ 130-131. It appears undisputed that Rocket Fuel does indeed have "proprietary technology for filtering for bots" and that it "filtered for quality," as those statements make no mention of the technology's effectiveness. Similarly, the statement that Rocket Fuel "will continue to stay ahead of the people who are trying to make a quick buck" makes no guarantee of any specific level of success, nor does it, as plaintiffs claim, "affirmatively create an impression of a state of affairs that differs in a material way from

11

the one that actually exists."  Thus, the court finds that these statements are not actionable.

      4.      Fourth quarter 2013 and fiscal year 2013

The complaint alleges as false/misleading statements made in a press release issued on January 22, 2014, statements made on a conference call on February 20, 2014, and statements made in its annual report filed on February 28, 2014.  Consolidated Complaint, ¶¶ 133-135.

The allegations regarding the January 22, 2014 press release appear to be based on the now-abandoned allegations that Rocket Fuel's financial guidance was false or misleading.

Regarding the conference call, plaintiffs point to defendant John's statement that "AI and big data is a competitive advantage enabling us to transform advertising and gain market share."  Id., ¶ 134.  Plaintiffs' papers do not present any argument as to why this statement is false/misleading, nor does the court have any basis for finding the statement to be false or misleading.

Finally, regarding the annual report, plaintiffs point to the same risk disclosure (the "if . . . then" statement) discussed in the context of the IPO materials.  For the same reasons discussed above, the court finds that this statement is not actionable.

      5.      Secondary offering materials

The statements identified in this section of the complaint overlap with the statements contained in the IPO materials.  Specifically, plaintiffs point to the same risk disclosure (i.e., the "if . . . then" statement) and the same discussion of Rocket Fuel's "solution" being "effective and efficient."  For the same reasons discussed above, the court finds that these statements are not actionable.

      6.      March 11, 2014 conference

The complaint alleges as false/misleading statements made during a March 11, 2014 conference, where defendant Bardwick stated that the company had "a lot of proprietary technology" and filtered "about a third of the 40 billion impressions a day that

we see. Some of it is bot, some of it is brand-related." ¶ 140. Plaintiffs do not dispute that Rocket Fuel has "a lot of proprietary technology," and the statement that Rocket Fuel filters "about a third of the 40 billion impressions a day" says nothing, express or implied, regarding the effectiveness of filtering out bot traffic. Thus, the court finds that these statements are not actionable.

### 7. First quarter 2014

This category of alleged false/misleading statements includes the now-abandoned allegations regarding financial guidance, and also includes the same risk disclosure (the "if . . . then" statement) mentioned numerous times above. Consolidated Complaint, ¶¶ 142-143. For the same reasons discussed above, the court finds that these statements are not actionable.

### 8. May 14, 2014 conference

The complaint alleges as false/misleading statements made at a May 14, 2014 conference, where defendant Bardwick stated that "we've got some proprietary things we do that we don't detail in public, that we do in order to make sure that we're delivering quality results to the advertisers," and that "we have said publicly that of the 40 billion impressions that we see per day . . . we filter about a third of them off the top for quality reasons, which would include potentially fraud-related reasons." Consolidated Complaint, ¶ 145. These statements are similar to the other statements made by Bardwick (especially the statements made at the March 11, 2014 conference), and similarly make no express or implied claims about the success of their anti-bot efforts. Thus, the court finds that these statements are not actionable.

The court also notes that the complaint alleges one additional false/misleading statement without providing a specific date on which it was made. Specifically, the complaint alleges that "before quieting [sic] revising its representation on or about June 25, 2014, the Company assured investors that the Company could 'block bad sites and pages before we ever serve a single ad on them.'" Consolidated Complaint, ¶ 124. The Rocket Fuel defendants claim that this statement was made in a website post on August

13

1    9, 2011 (more than two years before the start of the class period), and plaintiffs do not
2    directly address this argument, though they do attempt some sleight of hand by grouping
3    the "block bad sites and pages" statement with the "identify and eliminate all fraud"
4    statement and making the blanket argument that "Rocket Fuel made these absolute and
5    unequivocal assurances to investors during the class period." Dkt. 108 at 14.  The court
6    finds no basis for concluding that the "block bad sites and pages" statement was made
7    during the class period; and moreover, the statement does not relate to bot views, and
8    instead, claims that Rocket Fuel's clients' ads will not be served on "bad sites and
9    pages," such as pornographic or hate-speech pages.  In other words, the statement
10   relates to the process for selecting pages on which ads are served, rather than the
11   process for blocking bot views.

12         The complaint also contains a separate section alleging that the Securities Act
13   claims are actionable, but a number of the statements identified in that section are a
14   subset of the statements discussed above – namely, the statements made in the IPO
15   materials and the secondary offering materials.  To the extent that the court has already
16   addressed the allegedly false/misleading statements made in the registration statements
17   (i.e., the "if . . . then" statement, the "effective and efficient" statement, and the "efficiently
18   connect with large audiences" statement), the court finds that they are not actionable for
19   the reasons discussed above.

20         The two previously-unaddressed statements are (1) a risk disclosure that Rocket
21   Fuel "may not be able to retain advertisers or attract new advertisers that provide us with
22   revenue that is comparable to the revenue generated by any advertisers we may lose,"
23   and (2) a list of "challenges faced by digital advertisers."  Consolidated Complaint,
24   ¶¶ 153, 155.

25         Plaintiffs allege that (1), while technically true, is misleading because "Rocket Fuel
26   omitted to disclose that its customers (and prospective customers) were already opting
27   out of using Rocket Fuel's services and bringing similar services in-house."  However,
28   while plaintiffs allege that certain customers were already "opting out" of Rocket Fuel's

14

1  services, the Underwriter defendants' motion pointed out the absence of any allegation
2  that Rocket Fuel was losing more customers than it was gaining, and plaintiffs failed to
3  respond to the argument in their opposition.  Thus, the court finds that this statement is
4  not actionable.

5  With respect to (2), plaintiffs allege that the list of challenges was "materially
6  misleading because defendants failed to disclose the challenges faced or the true risks
7  and negative trends posed by the impact of digital fraud and bot traffic on the company's
8  operations and financial performance."  However, the list was presented as a list of
9  challenges facing the digital advertising industry as a whole, not just Rocket Fuel, and
10 made no representations regarding Rocket Fuel at all, let alone its ability to combat
11 advertising fraud and bot traffic.  Thus, the court finds that this statement is not
12 actionable.

13 In its opposition to the Underwriter defendants' motion to dismiss, plaintiffs attempt
14 to use a recent Supreme Court opinion to expand the scope of what can be considered
15 part of the registration statement, arguing that the representations need to be considered
16 in a "broader frame."  See Omnicare, Inc. v. Laborers District Council Construction
17 Industry Pension Fund, 135 S.Ct. 1318, 1330 (2015).

18 Plaintiffs stretch Omnicare too far, in an apparent attempt to shoehorn their
19 strongest allegation ("identify and eliminate all threats") into all asserted claims.  To the
20 contrary, Omnicare holds only that "an investor reads each statement within such a
21 document, whether of fact or opinion, in light of all its surrounding text, including hedges,
22 disclaimers, and apparently conflicting information."  Id.  Nothing in Omnicare endorses
23 plaintiffs' approach of importing statements into registration materials in order to state a
24 Securities Act claim.

25 Finally, to the extent that plaintiffs allege that the registration statements were
26 false or misleading due to the failure to include information required by Item 303 of
27 Regulation S-K, they have failed to adequately allege any failure to disclose "known
28 trends or uncertainties that have had or that the registrant reasonably expects will have a

15

1    material favorable or unfavorable impact on net sales or revenues or income from
2    continuing operations." Plaintiffs appear to allege that the "known trend or uncertainty"
3    was "ad fraud and the effect of ad fraud," but as the above discussion shows, the
4    prospect of ad fraud was extensively discussed in the registration statements.

5    Accordingly, because the complaint does not adequately allege that any statements contained in registration statements were false or misleading, the court finds that all Securities Act claims must be DISMISSED. Because only Securities Act claims are asserted against the Underwriter defendants, their motion to dismiss is GRANTED in full, without leave to amend. The court need not, and does not, reach any of the other arguments presented in connection with the Underwriter defendants' motion. With regard to the Rocket Fuel defendants' motion to dismiss, it is GRANTED with respect to the Securities Act claims. Because only Securities Act claims are asserted against the Director defendants, no claims remain asserted against them, and their motion to dismiss is GRANTED without leave to amend.

With regard to the remaining Exchange Act claims asserted against Rocket Fuel and the Insider defendants, all that remains are the statements made in the November 6, 2013 website posting – namely, that Rocket Fuel "undermines fraudulent practices and makes sure con artists always leave empty-handed" and is "able to identify and eliminate all threats before serving a single ad."

As briefly mentioned above, the Rocket Fuel defendants argue that the statements made in the November 6, 2013 website post cannot be attributed to the Insider defendants, as plaintiffs do not allege that defendants John, Frankel, or Bardwick "authored, reviewed, or approved any portion" of the statement. Defendants cite a portion of a Supreme Court opinion holding that "one 'makes' a statement by stating it," but omits the portion of the Court's order holding that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Janus Capital Group, Inc. v. First Derivative Traders, 131 S.Ct. 2296, 2302 (2011). And the complaint does indeed allege that the

16

three Insider defendants "possessed the power and authority to control the contents of the Company's press releases [and] investor and media presentations." Consolidated Complaint, ¶¶ 31-33. Thus, for purposes of this motion to dismiss, the court finds that plaintiffs have adequately alleged that the Insider defendants had "ultimate authority" over the statements contained within the November 6, 2013 website posting. Moreover, plaintiffs may also attribute the statement to the company itself, which is also named as a defendant on the Exchange Act claims.

Turning to the issue of scienter, while the parties make a number of arguments regarding defendants' stock sales, the court finds that the issue can be resolved rather simply given the fact that only the November 6, 2013 website statements are actionable. As mentioned above, in their motion, the Rocket Fuel defendants appear to express skepticism that "a reasonable investor would have found and relied upon this marketing statement as a guarantee that Rocket Fuel's technology prevents <u>literally every single instance of ad fraud</u> in the billions of impressions Rocket Fuel considered per day." Dkt. 99 at 19-20 (emphasis in original). To the extent that defendants imply that a reasonable investor would know that the statement was not literally true, that implication also supports a finding that the statements were made with scienter. Moreover, the "core operations" theory, which allows a court to "infer[] that the facts critical to a business's core operations or important transactions are known to a company's key officers," further supports the court's finding that plaintiffs have adequately alleged scienter as to the Insider defendants.

Regarding the company defendant, plaintiffs rely on the "corporate scienter" doctrine. While the Rocket Fuel defendants argue that such a theory is accepted only in "unusual" cases, the Ninth Circuit has held only that corporate scienter is unlikely in cases where no individual officer or director is alleged to have had the required intent to defraud. <u>Glazer Capital Management v. Magistri</u>, 549 F.3d 736, 745 (9th Cir. 2008). The court left open the possibility of alleging corporate scienter where the directors and officers were also implicated. Because the court has already found that plaintiffs have

17

adequately alleged scienter as to the three Insider defendants, it also finds that plaintiffs have adequately alleged corporate scienter.

Turning to loss causation, the Rocket Fuel defendants are correct that plaintiffs' theory of loss causation is difficult to follow, but defendants have also mischaracterized plaintiffs' theory in a number of ways. The complaint identifies only two loss-causing events: (1) a partial corrective disclosure on May 8, 2014, where Rocket Fuel announced disappointing financial results leading to a 21.5% drop in stock price the next day, and (2) an August 5, 2014 corrective disclosure where the company again announced disappointing financial results and also lowered its revenue guidance, leading to a 30% drop in stock price. The first disclosure is referred to as "partial" because plaintiffs allege that it did not reveal the full extent of the company's problems with bot traffic, and because the stock price continued to be inflated by defendants' allegedly false/misleading statements. The second disclosure more fully explained that bot traffic was affecting their financial results.

Defendants seize on two other events – the May 26, 2014 Financial Times article and July 23, 2014 Digiday article – and argue that the supposed truth was "revealed" by those articles, and because there was no corresponding drop in stock price, plaintiffs' loss causation theory must fail. However, in making this argument, defendants appear to re-write the allegations of the complaint in order to make them easier to dismiss. Nowhere do plaintiffs allege that the two articles were loss-causing events. Moreover, the Ninth Circuit has cited, with approval, cases from other circuits holding that loss causation is "not to be decided on a Rule 12(b)(6) motion to dismiss," and that "loss causation becomes most critical at the proof stage." In re Gilead Sciences Securities Litigation, 536 F.3d 1049, 1057 (9th Cir. 2008). In accordance with Gilead, the court finds that the complaint "alleges facts that, if taken as true, plausibly establish loss causation."

Accordingly, with respect to the Exchange Act claims based on statements made in the November 6, 2013 website post (i.e., the "identify and eliminate all threats"

18

statement and the "con artists always leave empty-handed" statements), the Rocket Fuel defendants' motion to dismiss is DENIED.

## CONCLUSION

For the foregoing reasons, the Underwriter defendants' motion to dismiss is GRANTED, and the Rocket Fuel defendants' motion is GRANTED in part and DENIED in part. Specifically, the Rocket Fuel defendants' motion is GRANTED to the extent that it seeks dismissal of all claims asserted against the Director defendants, and to the extent that it seeks dismissal of the Securities Act claims asserted against the Insider defendants and the Company defendant. To the extent that the Rocket Fuel defendants' motion seeks dismissal of the Exchange Act claims asserted against the Insider defendants and the Company defendant, the motion is DENIED.

Finally, the court notes that a related case (Veloso v. John, 15-4625) was filed during the pendency of the present motions, and stayed pending the outcome of the motions. The Veloso parties have stipulated to meet and confer and submit a proposed schedule within 30 days of this order, and the court also directs the parties in this case to meet and confer with the Veloso parties, and to submit a joint stipulation as to a date for a case management conference to include all parties in both cases. The parties may find available dates for a case management conference on the court's website.

**IT IS SO ORDERED.**

Dated:  December 23, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge