UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE ROCKET FUEL INC.
SECURITIES LITIGATION

Case No.  14-cv-03998-PJH

**ORDER DENYING MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT; DENYING MOTIONS FOR LEAVE TO FILE UNDER SEAL**

Re: Dkt. Nos. 183, 186, 195, 201

Before the court is lead plaintiffs' motion for leave to file an amended complaint. Dkt. 186.  The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion for leave to file an amended complaint, for the following reasons.

**BACKGROUND**

**A.     Factual & Procedural History**

This is a putative class action against Rocket Fuel and several of its officers for securities violations.  Rocket Fuel is an Internet advertising company, offering technological solutions to find, sell, and optimize digital advertising using its an automated ad-buying platform.  At issue in this case are Rocket Fuel's efforts to combat "digital ad fraud"—in particular, when ads are viewed or clicked on by computer programs known as "bots."  The presence of bots can skew the number of views that an ad receives, so that advertisers are paying for views ("impressions") or clicks that are not made by real people.

Plaintiffs, who were purchasers of Rocket Fuel stock during the relevant period, allege that Rocket Fuel's directors and officers made false and misleading statements (and omissions) regarding the technology's effectiveness at combatting ad fraud, which artificially inflated its stock price.  Despite knowing of the true extent of the bot problem, defendants allegedly continued to tout their technology's capabilities.  Plaintiffs also

United States District Court
Northern District of California

1   allege that defendants made a secondary stock offering that was timed to allow company

2   insiders to unload their stock at artificially inflated prices.  Ultimately, defendants were

3   forced to announce poor earnings performances and to admit that customers were taking

4   their business elsewhere because of the bot problem.  These announcements caused

5   Rocket Fuel's stock price to drop, precipitating this lawsuit.

6        The amended consolidated complaint was filed on February 27, 2015.  Dkt. 92.

7   Claims based on the Securities Act and Exchange Act were brought against four sets of

8   defendants: (1) Rocket Fuel itself; (2) the "Insiders" (Rocket Fuel officers during the class

9   period); (3) the "Directors" (members of Rocket Fuel's Board during the class period); and

10   (4) the "Underwriters" (banks involved in the IPO and secondary offering).

11        On December 23, 2015, this court granted in part defendants' motion to dismiss

12   the complaint.  See Dkt. 130 (the "December 23 Order").  The court found that none of

13   the statements in Rocket Fuel's IPO materials or secondary offering materials were

14   misleading.  See id. at 9, 12.  Accordingly, all of the Securities Act claims were dismissed

15   without leave to amend.  Id. at 16.  Because the Underwriters and the Directors were

16   named as defendants only with respect to the Securities Act claims, they were dismissed

17   as defendants entirely.  Id.

18        However, the court found that statements made in a November 2013 blog post

19   were potentially actionable, and allowed the Exchange Act claims to proceed against

20   Rocket Fuel and the Insiders, only with respect to those statements.  Id. at 16, 19.  The

21   specific statements, made on Rocket Fuel's website, were that (1) Rocket Fuel is "able to

22   identify and eliminate all threats before serving a single ad"; and (2) Rocket Fuel

23   "undermines fraudulent practices and makes sure con artists always leave empty-

24   handed."  Id. at 11.

25   **B.     The Proposed Amended Complaint**

26        In the instant motion, plaintiffs seek leave to file a proposed amended complaint

27   (the "PAC").  Dkt. 186.  The PAC would add Mohr Davidow Ventures ("MDV") as a new

28   defendant, as well as reinstating some claims against the former Underwriter Defendants

United States District Court
Northern District of California

2

and William Ericson.  MDV is a "venture capital institutional investor" whose affiliates at one time controlled approximately one-third of Rocket Fuel's shares.  PAC ¶¶ 57, 59. Ericson was both a Director of Rocket Fuel and the managing general partner of MDV. PAC ¶ 58.

The PAC groups the defendants as follows:

- The **"Company Defendant"** – Rocket Fuel itself.  PAC ¶ 30.
- The **"Insider Defendants"** – (former) Rocket Fuel CEO George H. John, President Richard Frankel, and CFO J. Peter Bardwick.  PAC ¶¶ 35–41.
- The **"Underwriter Defendants"** - Credit Suisse Securities LLC, Citigroup Global Markets Inc., and Piper Jaffray.  PAC ¶¶ 49–54.
- The "**MDV Defendants**" – MDV, MDV-affiliated entities, and director William Ericson.  PAC ¶¶ 57–62.
- The **"Securities Act Defendants"** – Rocket Fuel, the Insider Defendants, Ericson, and the Underwriter Defendants.  PAC ¶ 7.

The PAC seeks to reinstate several dismissed Securities Act claims, asserting five causes of action, all based collectively on various allegedly false and misleading statements:

- **Counts 1 – Violations of Sections 10(b) of the Exchange Act** (against Rocket Fuel and the Insider Defendants) – this claim survived the prior motion to dismiss.
- **Count 2 – Violations of Section 20(a) of the Exchange Act** (against the Insider and MDV Defendants) – this claim survived the prior motion to dismiss, but the PAC adds MDV and Ericson as new defendants.
- **Count 3 – Violation of Section 20A of the Exchange Act** (against the Insider and MDV Defendants) – this claim survived the prior motion to dismiss, but the PAC adds MDV and Ericson as new defendants.
- **Count 4 – Violation of Section 11 of the Securities Act in connection with the Offerings** (against Ericson and the Securities Act defendants) – reinstated from the prior complaint, although directors other than Ericson are no longer named as defendants.
- **"Count 7"[1] – Violations of Section 15 of the Securities Act** (against the Insider Defendants and Ericson) - reinstated from the prior complaint, although directors other than Ericson are no longer named as defendants.

_____

[1] Although it is the fifth claim in the PAC, this claim is labeled "Count 7", presumably to correspond to the numbering used in the prior complaint.

United States District Court
Northern District of California

1   The PAC also adds new factual allegations, based on materials unearthed in discovery,

2   which are discussed below.

### THE MOTION FOR LEAVE TO AMEND

4   **A.    Legal Standard**

5   In a prior decision, the court clarified that the deadline to amend the pleadings in

6   this case was September 5, 2016.  Dkt. 177.  That deadline was proposed and agreed to

7   by the parties, and adopted by the court at the March 31, 2016 case management

8   conference.  See Dkt. 141 at 5; Dkt. 148 at 7; Dkt. 145.  Plaintiffs did not move for

9   amendment until December 16, 2016, over three months past the deadline.  Therefore,

10   as the court has already held, Federal Rule of Civil Procedure 16(b)'s standard applies to

11   plaintiffs' motion for leave to amend.

12   Under Rule 16(b), "[a] schedule shall not be modified except upon a showing of

13   good cause and by leave of the district judge."  Fed. R. Civ. P. 16(b).  A party seeking to

14   amend a pleading after the deadline set in the case management and pretrial order must

15   make a showing under the more stringent "good cause" standard of Rule 16(b), and then,

16   only if good cause is shown, demonstrate that the motion is proper under Rule 15.

17   Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992).

18   "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the

19   party seeking . . . amendment and the prejudice to the opposing party, Rule 16(b)'s 'good

20   cause' standard primarily considers the diligence of the party seeking the amendment."

21   Johnson, 975 F.2d at 609; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294

22   (9th Cir. 2000).

23   To show the requisite diligence, the party seeking amendment must establish both

24   that its noncompliance with a Rule 16 deadline "occurred . . . because of the

25   development of matters which could not have been reasonably foreseen or anticipated"

26   and that it was "diligent in seeking amendment of the Rule 16 order, once it became

27   apparent that [it] could not comply."  Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D.

28   Cal. 1999).

United States District Court
Northern District of California

1        Presuming that good cause and diligence are established, plaintiffs would further

2   need to show that amendment is proper under the more liberal Rule 15 standard.  See

3   Fed. R. Civ. P. 15(a)(2).  In deciding whether to grant a motion for leave to amend under

4   Rule 15, the court considers bad faith, undue delay, prejudice to the opposing party,

5   futility of amendment, and whether the moving party has previously amended the

6   pleading.  In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 738 (9th

7   Cir. 2013); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).

8   Of these factors, the consideration of prejudice to the opposing party carries the greatest

9   weight.  Eminence Capital, 316 F.3d at 1052.  "The party opposing amendment bears the

10  burden of showing prejudice."  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187

11  (9th Cir.1987).

**B.      Analysis**

**1.      Failure to Show "Good Cause" to Amend**

14       Plaintiffs' primary contention supporting leave to amend is that some documents

15  were not disclosed to them until after the amendment deadline.  In making this argument,

16  plaintiffs rely on the volume and timing of discovery productions in general, without

17  explaining why this newly discovered evidence necessitates their proposed amendments.

18  Nor do plaintiffs specifically state when they first learned the facts justifying each of their

19  proposed amendments, or when they first contemplated amendment of the complaint

20  based on that information.

21       In particular, plaintiffs do not even attempt to explain why the new documents

22  justify adding new defendants or reinstating claims and defendants that the court, in its

23  December 23 Order, has already dismissed from the case without leave to amend.  In

24  order to justify such amendments, plaintiffs would need to show that either (i) they have

25  uncovered new statements that are allegedly actionable; or (ii) the new material renders

26  misleading some statements that the court has previously found not to be actionable and

27  dismissed from the case.  Plaintiffs have not made either showing.  Plaintiffs nowhere

28  identify any new statements in the registration materials for the IPO or secondary offering

5

United States District Court
Northern District of California

1    on which they seek to rely.  Nor do plaintiffs explain why the new evidence renders

2    misleading any statement previously held to be non-actionable.  The court therefore finds

3    that there is no "good cause" to reinstate dismissed claims and defendants.

4    　　　　To the extent that plaintiffs merely seek to add new evidence in support of their

5    existing claims, leave to amend the complaint is unnecessary.  In many of the proposed

6    amendments, plaintiffs cite to evidence that appears relevant to the alleged falsity of the

7    actionable marketing blog statements or to the defendants' knowledge of that falsity.

8    Materials such as customer complaints about ad fraud and unusually high click-through

9    rates are used by plaintiffs to show the weaknesses of Rocket Fuel's technology.  This

10   category includes what plaintiffs refer to as the "mobile," "video" and "scienter"

11   amendments.  Plaintiffs are of course free to rely on such evidence, provided it is

12   admissible, to prove their case at class certification, summary judgment, and trial.  There

13   is no requirement that the documents be cited in the complaint.  However, the mere fact

14   that relevant evidence was produced in discovery, standing alone, does not establish

15   good cause to amend.  Plaintiffs do not make a connection between this new evidence

16   and their request to revive previously dismissed claims and defendants.

17   　　　　To be sure, the new evidence may offer additional support for plaintiffs' allegations

18   that Rocket Fuel's technology was ineffective.  However, the court's prior dismissal order

19   was based on the notion that (with two exceptions) the challenged statements could not

20   possibly be misleading because they did not imply any specific level of success in

21   combatting ad fraud.  December 23 Order at 8–16.  Additional evidence that Rocket

22   Fuel's technology was ineffective does not make any of those statements actionable.

23   　　　　**2.    Lack of Diligence and Prejudice to Defendants**

24   　　　　Moreover, plaintiffs have not shown diligence in timely pursuing amendment.

25   Defendants did not move for leave to amend the complaint until December 16, 2016.

26   However, most of the new documents cited in the PAC were produced in July and August

27   of 2016.  See Dkt. 196-1, Defs.' Opp'n App. A.  Although a small number of the new

28   documents were produced in September (e.g., the "mobile" documents), these

United States District Court
Northern District of California

1   documents are simply another piece of evidence purporting to show Rocket Fuel's

2   ineffectiveness at combatting ad fraud.  Although plaintiffs cite some documents from

3   December productions in the PAC, these documents could not possibly have been the

4   motivation for seeking amendment, because plaintiffs had already announced their intent

5   to amend on November 22, 2016.  In short, plaintiffs received the majority of the new

6   evidence by mid-August of 2016, yet they did not actually move for leave to amend until

7   four months later.

8          Discovery in this case was stayed from October 17 through December 1 in light of

9   the parties' mediation, Dkt. 171, and therefore the court will not count this period against

10  plaintiffs.  Similarly, plaintiffs' three-week delay between November 22 and the filing of

11  their motion can be justified by a dispute between the parties over the defendants'

12  confidentiality designations.  Thus, in evaluating the plaintiffs' diligence, the court will not

13  consider that period either.

14         However, even giving plaintiffs every benefit of the doubt, plaintiffs still must

15  account for the delay between mid-August (when they had most of the relevant materials)

16  and mid-October (when discovery was stayed).  The only explanation offered to account

17  for the delay during this period is plaintiffs' need to review the defendants' productions.

18  The court finds this to be an insufficient explanation for plaintiffs' substantial delay in

19  seeking leave to amend.

20         On the contrary, the amendment deadline was set, at the suggestion of the

21  parties, nearly a year before the close of discovery.  As a result, plaintiffs should have

22  "reasonably foreseen" that defendants would still be producing documents in discovery

23  after the amendment deadline.  See Jackson, 186 F.R.D. at 608.  It should have been no

24  surprise that defendants would not have produced all relevant documents prior to

25  September 5, 2016.  In this situation, leave to amend should be reserved for cases where

26  something truly unexpected or surprising emerges in discovery.  Plaintiffs nowhere

27  explain how the materials cited in the PAC, although relevant, were unexpected,

28  revelatory, or otherwise justify untimely amendment.  The burden to establish diligence is

United States District Court
Northern District of California

United States District Court
Northern District of California

1    on the plaintiffs, and the court finds that they have not met that burden.

2        Finally, although the court does not need to reach the issue, the court further finds

3    that amendment would substantially prejudice the defendants.  Permitting amendment

4    would effectively derail the resolution of plaintiffs' class certification motion, which has

5    been pending since August 2016.  Dkt. 168.  That motion is nearly completely briefed,

6    and defendants have already incurred hundreds of thousands of dollars in fees and

7    expenses in preparing their opposition to class certification.  Permitting plaintiffs' leave to

8    file an amended complaint at this late date would make that expenditure a waste.

9        In sum, plaintiffs have not shown "good cause" for their request for leave to

10    amend.  Plaintiffs nowhere justify the reinstatement of dismissed claims and parties, or

11    the addition of new parties to this case.  Moreover, plaintiffs were not diligent in pursuing

12    amendment, and permitting amendment would substantially prejudice the defendants.

13    For all these reasons, the motion for leave to file an amended complaint is DENIED.

14                    **THE MOTIONS FOR LEAVE TO FILE UNDER SEAL**

15        In conjunction with the briefing on the motion for leave to amend, the parties have

16    filed several motions to file materials under seal.  See Dkt. 183, 195, 201.  Plaintiffs'

17    motions are based on defendants' confidentiality designations, which defendants have

18    sought to justify with several supporting declarations.  See Dkt. 192, 195–1, 206.

19    **A.    Legal Standard**

20        The proponent of sealing bears the burden with respect to sealing, due to the

21    "default posture of public access."  Kamakana v. City & County of Honolulu, 447 F.3d

22    1172, 1182 (9th Cir. 2006).  When a motion is "more than tangentially related to the

23    merits of a case," a strong presumption in favor of access applies.  See Ctr. for Auto

24    Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101 (9th Cir. 2016).  The party seeking to

25    seal needs to articulate "compelling reasons" supported by specific factual findings to

26    seal a document.  Kamakana, 447 F.3d at 1178.

27        In contrast, a lower burden—the "good cause" standard—applies to non-

28    dispositive motions only tangentially related to the merits.  Id. at 1179–80.  For "private

8

1   materials unearthed during discovery," the movant need only show that "'good cause'

2   exists to protect th[e] information from being disclosed to the public by balancing the

3   needs for discovery against the need for confidentiality."  Phillips ex rel. Estates of Byrd v.

4   Gen. Motors Corp., 307 F.3d 1206, 1213 (9th Cir. 2002).

5         In this district, requests to file documents under seal in civil cases are governed by

6   Civil Local Rule 79-5, which provides that "[n]o document may be filed under seal . . .

7   except pursuant to a Court order that authorizes the sealing of the particular document,

8   or portions thereof[;]" and further, that a sealing order may issue only based upon a

9   request showing that the document, or portions thereof, is privileged, or protectable as a

10  trade secret, or otherwise entitled to protection under the law.  Civ. L.R. 79-5(a).  In

11  particular, "[t]he request must be narrowly tailored to seek sealing only of sealable

12  material . . . ."  Id.

13        If a party seeks to file under seal a document that has been designated

14  confidential by another party pursuant to a protective order, or if a party wishes to refer to

15  information so designated by another party, the submitting party must file a motion for a

16  sealing order, and the designating party must file a declaration within seven days

17  "establishing that the designated information is sealable, and must lodge and serve a

18  narrowly tailored proposed sealing order, or must withdraw the designation of

19  confidentiality.  If the designating party does not file its responsive declaration as required

20  by this subsection, the document or proposed filing will be made part of the public

21  record."  Civ. L.R. 7-9(d).

22  **B.    Analysis**

23        Because the motion for leave to amend is non-dispositive and only tangentially

24  related to the merits of this case, defendants need only show "good cause" to seal.

25  However, even under this lower standard, the court finds that defendants have not met

26  their burden to show that the material designated as "confidential" is sealable.

27        Having reviewed the materials sought to be sealed, the court finds that defendants

28  have gone too far in their confidentiality designations.  Under the Local Rules, sealing

United States District Court
Northern District of California

9

1    must be narrowly tailored and limited to information that is privileged, a trade secret, or

2    otherwise protected by law.  With a few exceptions, the information sought to be sealed,

3    while perhaps embarrassing to Rocket Fuel, is not information that, if made public, would

4    reveal Rocket Fuel's trade secrets or give their competitors an unfair advantage.

5          The bulk of the material sought to be filed under seal are emails to and from

6    Rocket Fuel employees concerning ad fraud.  For example, several of the documents

7    sought to be sealed by defendants in conjunction with their opposition, see Decl. of

8    Jeffrey Mitchell, Dkt. 195-1 Ex. 8–10, are emails among Rocket Fuel officers regarding

9    reports of ad fraud from an investor.  Defendants' characterization of this document as

10   "internal deliberations between Rocket Fuel executives regarding investor relations" does

11   not identify a trade secret or provide good cause to justify the sealing.

12         Similarly, plaintiffs' PAC and the briefing relies on customer complaints about ad

13   fraud and internal discussions regarding indications of fraud (such as suspiciously high

14   click through rates) on various ad campaigns.  Plaintiffs use these documents to support

15   their allegations that defendants had knowledge of the ineffectiveness of Rocket Fuel's

16   fraud prevention technology.  Defendants argue that these emails are sealable because

17   Rocket Fuel "maintains its internal communications regarding its clients in confidence,"

18   but the court finds this explanation insufficient.  If Rocket Fuel is worried about particular

19   customers being targeted, the court will permit defendants to redact the specific customer

20   names for the various ad campaigns, but not the entire emails.  Nor has Rocket Fuel

21   established that the click through rates for its past ad campaigns, so anonymized,

22   represent a trade secret.

23         Defendants also contend that some of the cited documents contain "strategy for

24   product development" or "internal methodologies used to combat fraud."  For example,

25   defendants seek to seal documents related to its fraud prevention efforts in the mobile,

26   social, and video channels on this basis.  Having reviewed these documents, the court

27   fails to see how these emails, which are from 2014, disclose a new product development.

28   Moreover, the material that defendants characterize as revealing its fraud prevention

United States District Court
Northern District of California

10

1  "methodology" do not generally provide the sort of technical detail that would make them

2  sealable as a trade secret.  In the main, the emails are merely reports about high click

3  through rates, fraud on particular ad campaigns, or general discussion about the fraud

4  problem.  Such emails do not disclose the technical details of Rocket Fuel's technology.

5  The court will permit the sealing of (parts of) two documents, which appear to

6  contain some technical information.  First, Exhibit 20 to the Declaration of Ramzi Abadou,

7  see Dkt. 183-30, contains details of the methodology used by a Rocket Fuel partner to

8  screen fraudulent traffic.  The court finds that good cause to seal this document exists, in

9  order to prevent disclosure that could aid fraudulent actors in evading the system.

10  Second, Exhibit 24 to the Abadou Declaration, see Dkt. 201-10, may be sealed in part:

11  the portion of the email chain sent on November 27, 2013 at 8:25 A.M. is sealable as

12  containing technical details on Rocket Fuel's fraud detection methodology.

13  Finally, Rocket Fuel occasionally relies upon invasion of privacy of its employees

14  as a reason in support of sealing.  See Dkt. 206 at 8 (citing a "discuss[ion of] a particular

15  employee's work performance").  The court finds that this reason justifies redaction of the

16  names of the particular employee(s) being discussed, but not sealing of entire

17  documents.

18  In summary, the court DENIES all of the pending motions to file material under

19  seal.  However, the court will grant the parties leave to redact: (1) specific third-party

20  customer names; (2) the names of Rocket Fuel employees who are not officers,

21  directors, or named defendants in this matter; and (3) the technical portion of Exhibit 24

22  to the Abadou Declaration.  In addition, the court will permit one document, Exhibit 20 to

23  Abadou Declaration, to filed under seal in its entirety.

## CONCLUSION

25  For the foregoing reasons, plaintiffs' motion for leave to amend the complaint (Dkt.

26  186) is DENIED.

27  The parties motions for leave to file under seal (Dkt. 183, 195, 201) are also

28  DENIED.  Within 14 days of the date of this order, the parties must refile their briefs and

United States District Court
Northern District of California

1   supporting papers with narrowly tailored redactions of truly confidential information,

2   limited to customer names, employee names, and the two documents discussed above.

3           Plaintiffs' pending motion for class certification has been stayed pending resolution

4   of the motion for leave to amend.  Dkt. 193.  That stay is lifted, and briefing on the motion

5   shall resume.  The plaintiffs shall file their reply brief in support of class certification no

6   later than **March 13, 2017**.  The court will hear argument on the matter on **April 12,**

7   **2017**, at 9:00 a.m. in Courtroom 3, 1301 Clay Street, Oakland, California.

8           Finally, in light of the above disposition, defendants' motion for leave to file a

9   surreply brief in opposition to plaintiffs' motion for leave to amend (Dkt. 208) is DENIED

10   as moot.

11          **IT IS SO ORDERED.**

12   Dated:  January 24, 2017

13

14   _____

15   PHYLLIS J. HAMILTON
    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California