Ramzi Abadou (SBN 222567)
**KAHN SWICK & FOTI, LLP**
912 Cole Street, #251
San Francisco, CA 94117
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

*Lead Counsel for Lead Plaintiffs Oklahoma
Firefighters Pension and Retirement System,
Browder Capital, LLC, and Patrick Browder*

[Additional Counsel to Appear on Signature Page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| In re ROCKET FUEL, INC. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates To:<br>ALL ACTIONS | ) Docket No. 4:14-cv-03998-PJH(JCS)<br>)<br>) <u>CONSOLIDATED CLASS ACTION</u><br>)<br>)<br>) **NOTICE OF MOTION AND UNOPPOSED**<br>) **MOTION FOR PRELIMINARY**<br>) **APPROVAL OF PROPOSED**<br>) **SETTLEMENT; MEMORANDUM OF**<br>) **POINTS AND AUTHORITIES IN**<br>) **SUPPORT THEREOF**<br>)<br>) Judge:  Hon. Phyllis Hamilton<br>) Courtroom:  3rd Floor, No. 3<br>) Date: May 31, 2017<br>) Time: 9:00 a.m. |

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

NO. 4:14-CV-03998-PJH(JCS)

**NOTICE OF MOTION AND UNOPPOSED MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 31, 2017 at 9:00 a.m. in Courtroom No. 3 on the 3rd Floor of 1301 Clay Street, Oakland, CA 94612, Oklahoma Firefighters Pension and Retirement System, Browder Capital, LLC, and Patrick Browder (together, "Plaintiffs" or "Lead Plaintiffs") will, and hereby do, move for an order pursuant to Rule 23 of the Federal Rules of Procedure: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the proposed class for purposes of settlement; (3) approving the form and manner of notice to the class; and (4) scheduling a final approval hearing before the Court.

The proposed settlement is within the range of what is fair, reasonable, and adequate such that notice of its terms may be disseminated to members of the class and a hearing for final approval of the proposed settlement scheduled.  This motion is based upon this Notice of Motion and Unopposed Motion, the Memorandum of Points and Authorities, *infra*, the accompanying Declaration of Ramzi Abadou, the Stipulation of Settlement, dated April 25, 2017, filed simultaneously herewith, the pleadings and records on file in this action, and other such matters and argument as the Court may consider.

Defendants do not oppose this Motion, and do not oppose certification of the class for settlement purposes.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the proposed Settlement is within the range of fairness, reasonableness and adequacy as to warrant: (a) the Court's preliminary approval; (b) the dissemination of Notice of its terms to proposed Settlement Class Members; and (c) setting a hearing date for final approval of the Settlement as well as application for attorneys' fees and reimbursement of expenses;

2.      Whether a Settlement Class should be certified;

3.      Whether the proposed Notice adequately apprises the Settlement Class Members of the terms of the Settlement and their rights with respect to it;

4.      Whether the proposed Plan of Allocation of settlement proceeds should be preliminarily approved; and

5.      Whether the Claim Forms are sufficient.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    SUMMARY OF THE LITIGATION ....................................................................2

III.   SUMMARY AND REASONS FOR THE SETTLEMENT....................................4

IV.    ARGUMENT .........................................................................................................5

    A.    The Law Favors and Encourages Settlements ...........................................5

    B.    The Proposed Settlement Should Be Preliminarily Approved ...............6

        1.    The Proposed Settlement was Vigorously Negotiated and Is Supported by Experienced Counsel .................................................8

        2.    The Proposed Settlement Provides a Favorable Recovery for the Class .....9

        3.    The Proposed Settlement Does Not Unjustly Favor any Class Members, Including Lead Plaintiffs .........................................10

        4.    The Stage of the Proceedings and the Discovery Completed ...................11

    C.    The Proposed Class Meets the Requisites for Class Certification Under Rule 23 .............................................................................................12

        1.    Numerosity.........................................................................................13

        2.    Commonality......................................................................................14

        3.    Typicality...........................................................................................15

        4.    Adequacy...........................................................................................16

        5.    Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication .........................................17

    D.    The Proposed Notice to the Class is Adequate ....................................19

    E.    The Plan of Allocation Should Be Preliminarily Approved .................21

    F.    The Intended Request for Attorneys' Fees and Expenses ...................23

    G.    The Proposed Claims Administrator.....................................................24

V.     PROPOSED SCHEDULE OF EVENTS AND FINAL APPROVAL PROCEEDINGS.................................................................................................24

VI.    CONCLUSION....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................. 16, 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   133 S. Ct. 1184 (2013) ......................................................................... 17, 18

*Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*,
   2013 U.S. Dist. LEXIS 165909 (N.D. Cal. Nov. 21, 2013) ........................................ 23

*Browning v. Yahoo! Inc.*,
   2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ......................................... 5

*Butler v. Sears, Roebuck & Co.* ,
   727 F.3d 796 (7th Cir. 2013) ...................................................................... 18

*Carter v. Anderson Merchandisers, LP*,
   2010 U.S. Dist. LEXIS 55581 (C.D. Cal. May 11, 2010) ......................................... 9

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................ 9

*Destefano v. Zynga, Inc.*,
   2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ......................................... 23

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) .................................................................... 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804, 131 S. Ct. 2179 (2011) ............................................................ 17

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ......................................... 23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) .......................................................................... 5, 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................. 12, 17

*Harris v. Vector Mktg. Corp.*,
   2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ......................................... 9

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ................................................................. 16

*Hootkins v. Chertoff*,
   2009 U.S. Dist. LEXIS 3243 (C.D. Cal. Jan. 6, 2009) ............................................ 17

*In re Adobe Sys., Inc. Sec. Litig.*,
 139 F.R.D. 150 (N.D. Cal. 1991) ........................................... 13

*In re Charles Schwab Corp. Sec. Litig.*,
 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. Apr. 19, 2011) ......................... 10

*In re Cooper Cos. Sec. Litig.*,
 254 F.R.D. 628 (C.D. Cal. 2009) ................................................ *passim*

*In re Emulex Corp.*,
 210 F.R.D. 717 (C.D. Cal. 2002) ........................................... 15, 18

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ......................... 8

*In re Heritage Bond Litig. v. U.S. Tr. Corp.*,
 546 F.3d 667 (9th Cir. 2008) ................................................ 12

*In re Heritage Bond Litig.*,
 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .................. 5, 6, 23

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................... 10, 19

*In re Infospace, Inc. Secs. Litig.*,
 330 F. Supp. 2d 1203 (W.D. Wash. 2004) ....................................... 10

*In re Initial Pub. Offering Sec. Litig.*,
 260 F.R.D. 81 (S.D.N.Y. 2009) ............................................. 17-18

*In re LDK Solar Sec. Litig.*,
 255 F.R.D. 519 (N.D. Cal. 2009) ............................................. 18

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ................................................ 10

*In re Oracle Corp. Sec. Litig.*,
 627 F.3d 376 (9th Cir. 2010) ................................................. 7

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ............................................... 6, 23

*In re Portal Software Sec. Litig.*,
 2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ..................... 11, 21

*In re Portal Software, Inc. Sec. Litig.*,
 2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ......................... 12

*In re STEC Inc.*,
 2012 U.S. Dist. LEXIS 186180 (C.D. Cal. Mar. 7, 2012) ......................... 14

*In re Surebeam Corp. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003) .......................................................... 16

*In re THQ, Inc. Sec. Litig.*,
    2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ....................................................... 13

*In re UTStarcom, Inc. Sec. Litig.*,
    2010 U.S. Dist. LEXIS 48122 (N.D. Cal. May 12, 2010) ................................................. 13, 14, 18

*In re VeriSign, Inc. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ....................................................... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2016 U.S. Dist. LEXIS 148374 (N.D. Cal. Oct. 25, 2016) ....................................................... 12

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ....................................................................................... 5, 6

*In re Zynga Sec. Litig.*,
    2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015) ....................................................... 22

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011) ........................................................................................................ 7

*Katz v. China Century Dragon Media, Inc.*,
    287 F.R.D. 575 (C.D. Cal. 2012) ....................................................................................... 13

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................................................................................. 19

*Livingston v. Toyota Motor Sales USA, Inc.*,
    1995 U.S. Dist. LEXIS 21757 (N.D. Cal. May 30, 1995) .......................................................... 9

*Morales v. Stevco, Inc.*,
    2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011) ........................................................ 9

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ................................................................................... 6, 17

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ....................................................................................... 14

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................................... 5, 6

*Or. Pub. Emples. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ............................................................................................. 7

*Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*,
    611 F. Supp. 990 (C.D. Cal. 1984) ..................................................................................... 14

*Rafton v. Rydex Series Funds*,
  2011 U.S. Dist. LEXIS 103141 (N.D. Cal. Sept. 13, 2011) ............................... 5

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
  2008 U.S. Dist. LEXIS 95083 (C.D. Cal. Nov. 13, 2008) ........................... 16

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
  2010 U.S. Dist. LEXIS 69799 (C.D. Cal. June 15, 2010) ........................... 19

*Satchell v. Fed. Express Corp.*,
  2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ........................ 8-9

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ........................................................... 18

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .............................................................. 7

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ............................................................ 5

*Vinh Nguyen v. Radient Pharms. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ..................................................... 14

*Wahl v. Am. Sec. Ins. Co.*,
  2011 U.S. Dist. LEXIS 59559 (N.D. Cal. June 2, 2011) ........................ 19

*Wehner v. Syntex Corp.*,
  117 F.R.D. 641 (N.D. Cal. 1987) ..................................................... 14

*Williams v. Costco Wholesale Corp.*,
  2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ....................... 6, 7

*Yamner v. Boich*,
  1994 U.S. Dist. LEXIS 20849 (N.D. Cal. Sept. 15, 1994) ..................... 14

*Ybarrondo v. NCO Fin. Sys., Inc.*,
  2009 U.S. Dist. LEXIS 100502 (S.D. Cal. Oct. 28, 2009) ..................... 17

*Young v. Polo Retail, L.L.C.*,
  2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ......................... 7

**Statutes**

15 U.S.C. § 78u-4 (2012) ......................................................... 10, 20, 23

**Rules**

Fed. R. Civ. P. 23 ................................................................ *passim*

v

Lead Plaintiffs respectfully submit this Memorandum of Points and Authorities in support of their unopposed motion for preliminary approval of the settlement in the above-captioned action ("Action"), and entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").  The Preliminary Approval Order will: (i) grant preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement, dated April 25, 2017 ("Stipulation" or "Settlement");[1] (ii) preliminarily certify the proposed class ("Class") for purposes of settlement;[2] (iii) approve the form and manner of notice of the proposed Settlement to the Class; and (iv) schedule a hearing date for final approval of the Settlement ("Settlement Fairness Hearing") and a schedule for various deadlines in connection with the Settlement.

## I.    INTRODUCTION

The parties have reached an agreement to resolve the Class' claims against Defendants Rocket Fuel, Inc., J. Peter Bardwick, George H. John, and Richard Frankel (collectively, the "Defendants") pursuant to the accompanying Stipulation.  The Settlement provides for the payment of three million one hundred fifty thousand dollars ($3,150,000.00) in cash for the benefit of the Class.

The Settlement is the product of efficient but contentious litigation followed by well-informed and extensive arm's-length negotiations between experienced and knowledgeable counsel, facilitated by mediator Jed Melnick, Esq. of JAMS.  Kahn Swick & Foti, LLC and Kaplan Fox & Kilsheimer LLP (collectively, "Lead Counsel") and/or its agents had: (i) conducted an extensive investigation, including review of filings with the Securities and Exchange Commission ("SEC"), press releases, news reports, filings in related litigation, analyst reports and other publicly available

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation.

[2]    The proposed Class is defined in the Stipulation at ¶1.3.  *See also* §IV.C, *infra*. and Notice of Pendency and Proposed Settlement of Class Action ("Notice"), attached to the Stipulation as Exhibit A-1.

information; (ii) filed one consolidated complaint, with several rounds of extensive briefing on those pleadings; (iii) consulted with experts; (iv) conducted exhaustive research of the applicable law for claims in this Action and the potential defenses thereto; (v) conducted interviews with relevant witnesses; (vi) participated in an arm's-length mediation process; and (vii) engaged in formal discovery, including extensive document production and review, subpoenas to non-parties, the taking of and defending depositions, and the further receipt and analysis of opposing expert reports.

Based on an informed evaluation of the facts and governing legal principles, and their recognition of the substantial risk and expense of continued litigation, the parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").   Accordingly, Lead Plaintiffs move for preliminary approval and submit this Memorandum of Points and Authorities in support thereof.

## II.    SUMMARY OF THE LITIGATION

The initial complaint was filed by Nipu Shah, an individual, on September 3, 2014.  ECF No. 1.  On November 3, 2014, various persons filed competing motions for appointment as lead plaintiff and selection of counsel.  *See, generally,* ECF Nos. 27 – 63.  The Court held proceedings on December 10, 2014 to hear arguments from the remaining movants.  ECF No. 78.  The Court appointed three entities: (i) Patrick Browder; (ii) Browder Capital, LLC; and (iii) Oklahoma Firefighters Pension and Retirement System.  ECF No. 85.

On February 27, 2015, Lead Plaintiffs filed the Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Consolidated Complaint"), which expanded upon the allegations contained in the original complaint and named four distinct groups of defendants: (i) the "Company Defendant" Rocket Fuel, Inc.; (ii) the "Insider Defendants," including George H. John, Richard Frankel, and J. Peter Bardwick; (iii) the "Director Defendants," including Susan L. Bostrom, Ronald E.F. Codd, William Ericson, John Gardner, Clark Kokich, and Monte Zweben; and (iv) the "Underwriter Defendants," including Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Needham & Company, LLC, Oppenheimer & Co., Inc., Piper Jaffray & Co., BMO Capital

Markets Corp., LUMA Securities LLC, and Goldman, Sachs & Co.  *See* ECF No. 92 at ¶¶ 26-56. On April 13, 2015, all defendants moved to dismiss the allegations in the Consolidated Complaint, further seeking judicial notice of certain events related to their motions.  *See* ECF Nos. 99 – 103. Lead Plaintiffs opposed the motions to dismiss, also seeking judicial notice of related facts.  ECF Nos. 108 - 111.  Defendants replied.  ECF Nos. 114 – 116.

The Court held oral argument on September 16, 2015, (ECF No. 121), and thereafter dismissed virtually all of the allegations.  ECF No. 130.  As all claims brought under the Securities Act of 1933 were dismissed, no claims remained against the Underwriter Defendants or the Director Defendants.  *Id.* at 16.  With regard to the remaining Exchange Act claims asserted against Rocket Fuel and the Insider Defendants, only statements published in a Company internet blog on November 6, 2013 remained.  *Id.*  These Defendants filed an answer on February 1, 2016.  ECF No. 136.  Shortly thereafter, the parties began discovery regarding the falsity of the published representations that the Company's proprietary technology both ". . . undermines fraudulent practices and makes sure con artists always leave empty-handed. . ." and ". . . is able to identify and eliminate all threats before serving a single ad."  *See* ECF No. 130.

Discovery has been extensive.  It has included the production and review of nearly 80,000 pages of documents from Defendants alone, the taking and defending of Mr. Browder's deposition, a Rule 30(b)(6) deposition of Rocket Fuel, the submission of two expert reports, and the deposition of Lead Plaintiffs' expert.  Lead Plaintiffs also served multiple non-party subpoenas.  Throughout discovery, Lead Plaintiffs have conducted multiple discovery conferences with Defense Counsel. Lead Plaintiffs likewise conducted multiple discovery conferences with the subpoenaed non-parties, yielding approximately 70,000 additional pages of documents.

Lead Plaintiffs and Defendants mediated their claims with Mr. Melnick during an in-person session on November 17, 2016.   No agreement was reached, but good-faith, arm's-length negotiations continued.   Meanwhile, Lead Plaintiffs continued pursuing discovery by reviewing additional documents produced by Defendants, and issuing additional subpoenas.

Lead Plaintiffs moved for class certification, appointment of class representatives, and appointment of class counsel on August 24, 2016; Defendants opposed. *See, generally*, ECF Nos. 168, 180. Further, Lead Plaintiffs sought leave to file an amended complaint on December 19, 2016. *See* ECF No. 186, 196, 202. That motion was denied on January 24, 2017. ECF No. 210. Throughout, Mr. Melnick assisted the parties in reaching a resolution, culminating in an agreement-in-principle on February 23, 2017. On February 24, 2017, the parties informed the Court, which stayed the Action for parties to negotiate and file a stipulation of settlement. ECF No. 219. The Court's stay administratively terminated the pending motion for class certification. *Id.*

Based upon their investigation, Lead Plaintiffs and Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to the Class and in their best interests. The parties have agreed to settle the Action pursuant to the terms and provisions of the Stipulation, after considering: (i) the substantial benefits that Class members will receive from resolution of the Action; (ii) the risks of continued litigation of what Defendants have described as a "one statement" case; and (iii) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.

## III.  SUMMARY AND REASONS FOR THE SETTLEMENT

Lead Plaintiffs entered this Settlement with an understanding of the strengths and weaknesses of their claims, based on Lead Counsel's (or its agents') extensive investigation during the prosecution of this Action, which included, *inter alia*: (i) review and analysis of filings made with the SEC by Rocket Fuel during the relevant time period; (ii) review and analysis of securities analyst reports, press releases, and media reports regarding Rocket Fuel and other publications issued by and through the Company; (iii) review and analysis of pleadings in related actions; (iv) interviews and depositions of witnesses; (v) research of the applicable law and potential defenses thereto; (vi) formal discovery, including review and analysis of responsive documents produced by Defendants and non-parties; and (vii) consultation with experts.

Considering the above steps, as well as the substantial expense and time necessary to

prosecute this Action through the completion of merits and expert discovery, trial and appeals, the risk that the Court may not certify the Class by finding that Defendants rebutted the *Basic* presumption,[3] and the considerable uncertainties in predicting the outcome of complex litigation, Lead Plaintiffs concluded that a substantial risk existed that the Class could recover less than the Settlement, or nothing at all, if the Action continued.  Mr. Melnick also has recommended and endorsed the Settlement.  Accordingly, the Court should grant preliminary approval of the Settlement.[4]

## IV.   ARGUMENT

### A.  The Law Favors and Encourages Settlements

Rule 23 requires judicial approval of any compromise of claims brought on a class-wide basis.  Rule 23(e) ("The claims…of a certified class may be settled…only with the court's approval.").  "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"[5]  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, at *39 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor settlement of class action law suits").  Moreover, the Ninth Circuit expressly recognizes that:

> [I]n making its assessment pursuant to Rule 23(e), the Court's[] 'intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a

---

[3]     *See generally*, Defendants' arguments at ECF No. 180, citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2414 (2014).

[4]     *See generally Rafton v. Rydex Series Funds*, 2011 U.S. Dist. LEXIS 103141 (N.D. Cal. Sept. 13, 2011); *In re Wireless Facilities*, *Inc. Sec. Litig. II*, 253 F.R.D. 607 (S.D. Cal. 2008).

[5]     Here, as elsewhere, citations and footnotes have been omitted and emphasis has been added unless otherwise indicated.

1
2

> lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'

3

4

*Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *10 (quoting *Officers for Justice*, 688 F.2d at 625).

5

Recognizing that "[p]arties represented by competent counsel are better positioned than courts to

6

produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts

7

favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

### B.  The Proposed Settlement Should Be Preliminarily Approved

8

9

Class action settlements require two stages of judicial approval: (i) preliminary approval,

10

followed by the distribution of notice to the class; and (ii) final approval. *Murillo v. Pac. Gas &*

11

*Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010).  "In the first stage of the approval process, 'the

12

court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the

13

Class. . . and authorize[s] notice to be given to the Class.'" *Id.*

14

At the preliminary approval stage, the "Court need only determine whether the proposed

15

settlement appears on its face to be fair" and "falls within the range of possible approval." *Williams*

16

*v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 19674, at *15-16 (S.D. Cal. Mar. 4, 2010); *see*

17

*also Wireless Facilities*, 253 F.R.D. at 612.  The Court is not presently required to make a final

18

determination as to whether the proposed Settlement will ultimately be found to be fair, reasonable,

19

and adequate.  That evaluation is made at the final approval stage, after notice of the proposed

20

Settlement has been given to the members of the Class and Class Members have had an opportunity

21

both to voice their views of the proposed Settlement and to exclude themselves from the Class. *See*

22

*Williams*, 2010 U.S. Dist. LEXIS 19674, at *14-15 ("Given that some [] factors cannot be fully

23

assessed until the Court conducts a Final Approval Hearing, 'a full fairness analysis is unnecessary

24

at this stage.'").[6]

25

26

---

[6]     In connection with final approval of the proposed Settlement, the Court will be asked to review the following factors: (1) the amount offered in Settlement; (2) the reaction of the Class Members to the proposed Settlement; (3) the strength of Lead Plaintiff's case; (4) the risk, expense,

27

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY                    NO. 4:14-CV-03998-PJH(JCS)
APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

28

1    Lead Plaintiffs' motion requests that the Court take the first step as "[p]reliminary approval

2    of a settlement and notice to the proposed class is appropriate: '[i]f [1] the proposed settlement

3    appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious

4    deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments

5    of the class, and [4] falls with the range of possible approval. . . .'"   *Williams*, 2010 U.S. Dist.

6    LEXIS 19674, at *15.[7]   As demonstrated below, the proposed Settlement is a fair and just result.

7    Given the complexity of this litigation, the potential difficulty of proving certain elements of the

8    Class' claims, and the continued risks if the parties proceeded to trial, the Settlement represents a

9    favorable resolution of this Action and eliminates the risk that the Class might otherwise recover

10   nothing.   Indeed, the ever-shifting landscape of Private Securities Litigation Reform Act of 1995

11   ("PSLRA") litigation demonstrates the risks of further litigation.   *See, e.g.*, *In re Oracle Corp. Sec.*

12   *Litig.*, 627 F.3d 376 (9th Cir. 2010) (affirming summary judgment on loss causation grounds); *Janus*

13   *Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) (redefining who "makes" a

14   statement); *Halliburton,* 134 S. Ct. at 2398 (addressing price impact at class certification); *Or. Pub.*

15   *Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 604-05, 608 (9th Cir. 2014) (applying Rule 9 to

16   loss causation element).

17   Accordingly, the proposed Settlement satisfies the criteria for assessing preliminary approval

18   of a proposed settlement set forth above, and the proposed Settlement is well within the range of

19   possible approval.

20

21

---

22   complexity, and likely duration of further litigation; (5) the extent of discovery completed, and the
     stage of the proceedings; (6) the experience and views of Lead Counsel; (7) the risk of maintaining
23   class action status throughout the trial; and (8) the absence of collusion.  *Williams, supra.*, at *14-15;
     *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375-76 (9th Cir. 1993).

24   [7]    *See also Young v. Polo Retail, LLC*, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct.
     25, 2006) ("'If the proposed settlement appears to be the product of serious, informed, non-collusive
25   negotiations, has no[] obvious deficiencies, does not improperly grant preferential treatment to class
     representatives or segments of the class, and falls within the range of possible approval, then the
26   court should direct that the notice be given to the class members of a formal fairness hearing.'").

27   NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY          NO. 4:14-CV-03998-PJH(JCS)
     APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
28   AND AUTHORITIES IN SUPPORT THEREOF

1

### 1.    The Proposed Settlement was Vigorously Negotiated and Is Supported by Experienced Counsel

Courts recognize that the opinion of experienced counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight.  *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (same).  Here, counsel have been actively litigating this Action, and Lead Counsel has conducted an extensive investigation into the alleged claims, including, *inter alia*: (i) review of hundreds of pages of documents obtained from Plaintiff's investigation; (ii) review of approximately 150,000 pages of documents obtained via formal discovery; (iii) review of media and analyst reports, SEC filings, and filings in related litigation; (iv) consultation with experts; (v) interviews (through investigators) with relevant witnesses; (vi) depositions of one of the Lead Plaintiffs, Lead Plaintiffs' expert, and of Rocket Fuel itself; (vii) review and analysis of opposing expert reports; and (viii) intensive research of the applicable law to the claims and defenses thereto.

Lead Counsel engaged in a rigorous negotiation process with Defense Counsel, and fully considered and evaluated the fairness of the Settlement to the Class.  The parties' settlement negotiations were hard-fought, and included the determined assistance of an experienced mediator.  At Mr. Melnick's direction, the parties submitted comprehensive mediation statements.  After submitting their statements, counsel for all parties attended an in-person mediation before Mr. Melnick and gave aggressive, detailed, and thoughtful presentations on the perceived strengths and weaknesses of their respective cases.  It was only after several months of intense discussions that the parties were ultimately able to reach an agreement-in-principle.  Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13,

1    2007).[8]

2         Additionally, throughout the Action and settlement negotiations, Defendants have been

3    vigorously represented by Wilson, Sonsini, Goodrich and Rosati.  Defense Counsel is equally well-

4    informed regarding the case, and their representation of Defendants was no less rigorous than Lead

5    Counsel's representation of the Class.  *See Livingston v. Toyota Motor Sales USA, Inc.*, 1995 U.S.

6    Dist. LEXIS 21757, at *16-17 (N.D. Cal. May 30, 1995).  Because the Settlement is the product of

7    serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified

8    mediator, it deserves preliminary approval.

9              **2.      The Proposed Settlement Provides a Favorable Recovery for the Class**

10        The Settlement provides for the recovery of three million one hundred fifty thousand dollars

11   ($3,150,000.00) in cash, to be allocated among Class Members following deduction of Court-

12   approved fees and expenses.  Lead Plaintiffs and the putative Class faced numerous factual and legal

13   obstacles.  Defendants adamantly deny any wrongdoing.  As in their motions to dismiss (*see,

14   generally*, ECF No. 99) and during oral argument (ECF No. 125), the remaining Defendants were

15   prepared to make a multi-pronged defense at trial.  Lead Plaintiffs anticipate that Defendants would

16   argue that: (i) the November 6, 2013 blog statements constituted nonactionable "puffery" related

17   only to product marketing; (ii) the statement was prepared by lower-level employees; (iii) the

18   Defendants did not personally make any of the blog statements; (iv) information in the market

19   created a reasonable inference that the reader would not conclude the statement guaranteed that

20   100% of bot traffic would be filtered out; (v) the statement was immaterial and did not impact the

21   Company's share price; and (vi) Defendants' actions did not cause any of the Class' alleged losses.

22        "Prosecuting these claims through trial and subsequent appeals would have involved

23   significant risk, expense, and delay to any potential recovery. . . risks included proving loss

24   _____

25   [8]      *See also Morales v. Stevco, Inc.*, 2011 U.S. Dist. LEXIS 130604, at *32 (E.D. Cal. Nov. 10,
     2011); *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, at *25 (N.D. Cal. Apr. 29,

26   2011); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *Carter v.
     Anderson Merchandisers*, *LP*, 2010 U.S. Dist. LEXIS 55581, at *22 (C.D. Cal. May 11, 2010).

27   NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY                      NO. 4:14-CV-03998-PJH(JCS)
     APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
28   AND AUTHORITIES IN SUPPORT THEREOF
                                                 9

1  causation and the falsity of the representations at issue." *In re Charles Schwab Corp. Sec. Litig.*,

2  2011 U.S. Dist. LEXIS 44547, at *19 (N.D. Cal. Apr. 19, 2011).

### 3. The Proposed Settlement Does Not Unjustly Favor any Class Members, Including Lead Plaintiffs

The Plan of Allocation described in the proposed Notice to the Class (*see* Exhibit A-1 to the Stipulation) provides for distribution of the Settlement Fund (after deduction of Court-approved fees and expenses) to Class Members who have a loss on their transactions in Rocket Fuel securities purchased or otherwise acquired during the Class Period. The formula to apportion the Net Settlement Fund among Class Members is based on when members purchased, acquired and/or sold shares of common stock, as developed by Lead Plaintiffs' damages consultant. This method ensures that Class Members' recoveries are based upon the relative losses sustained. All Class Members, including Lead Plaintiffs, will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner.

The Notice further discloses that Lead Plaintiffs may apply to the Court for reimbursement of reasonable costs and expenses (including lost wages) directly related to representation of the Class; a proper request pursuant to the PSLRA. 15 U.S.C. §78u-4(a)(4).[9] Although Lead Plaintiffs will share in the Net Settlement Fund in the same proportion as all Class Members, they may recover reasonable costs and expenses incurred as a result of activities undertaken on behalf, and directly related to their representation, of the Class.[10] *See id.*

---

[9]  *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming reimbursement award to class representative in securities class action); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173 (S.D. Cal. 2007) (approving $40,000 reimbursement to lead plaintiff); *In re Infospace, Inc. Sec. Litig.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (same)

[10]  The PSLRA specifically provides for reimbursement to representative plaintiffs in securities fraud class actions. Pursuant to 15 U.S.C. §78u-4(a)(4): "The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY     NO. 4:14-CV-03998-PJH(JCS)
APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

10

Thus, the Settlement does not improperly grant preferential treatment to Lead Plaintiffs or segments of the Class. *In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *14-15 (N.D. Cal. June 30, 2007).

### 4.    The Stage of the Proceedings and the Discovery Completed

The stage of the proceedings and discovery completed are additional factors supporting the Settlement. As discussed in detail above, Lead Counsel (or its agents) engaged in extensive investigation, research, and analysis of the Class' claims, including, *inter alia*, review of SEC filings, analyst reports, news media, filings in related litigation, and interviews with relevant witnesses. Lead Plaintiffs and Counsel also, throughout various rounds of pleadings and motions to dismiss, engaged in extensive legal research, fine-tuning and honing their claims. As a result, the Court partially upheld Lead Plaintiffs' Consolidated Complaint and lifted the PSLRA's discovery stay.

Lead Plaintiffs thereafter aggressively pursued discovery from the Defendants through requests for production of documents, interrogatories, and admissions. Regarding document production, the parties negotiated an electronically-stored-information ("ESI") protocol, which resulted in some 78,660 pages of fact-related material produced by Defendants for review, plus another 1,758 pages of documents relied upon by their retained expert.  Lead Plaintiffs also subpoenaed relevant non-parties, including (i) three of the Company's IPO underwriters; (ii) two early investor venture capital firms; (iii) the independent technology company Telemetry, whose study of the Company's Mercedes-Benz campaign was reported by the *Financial Times*; and (iv) over a dozen Rocket Fuel customers.  Lead Plaintiffs' subpoenas to non-parties generated approximately 70,000 pages of additional fact-related documents.  Combined, this discovery helped Lead Plaintiffs evaluate the merits of their claims—namely, the effectiveness of Rocket Fuel's technology, whether its performance was consistent with the November blog post representations, and the remaining Defendants' knowledge of same at the time the November statements were made.

One of the Lead Plaintiffs was deposed,[11] as was Lead Plaintiffs' retained market efficiency expert, Dr. Zachary Nye.  The parties exchanged expert reports supporting their positions regarding class certification, and reviewed same in concert with their experts.  The parties presented their best arguments to an objective audience in the form of the mediator, Mr. Melnick.  Mr. Melnick gave the parties a reasonable assessment of the strengths and weaknesses of their case.  Considering this, the litigants have sufficient basis to make informed decisions about the relative merits of the case and the fairness of the Settlement.

In a class action setting, courts look for indications that the parties carefully investigated the claims before reaching a resolution; significant written discovery (such as requests for production, interrogatories, and requests for admission) weighs in favor of approving the settlement.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 148374, at *758-59 (N.D. Cal. Oct. 25, 2016) (". . . extensive review of discovery materials indicates [Lead Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *10-11 (N.D. Cal. Nov. 26, 2007).

In light of these considerations, the Settlement is reasonable and within the range of possible approval.  Lead Plaintiffs therefore respectfully ask the Court to grant preliminary approval of the Settlement and direct that notice be given to the Class.

**C.  The Proposed Class Meets the Requisites for Class Certification Under Rule 23**

The Ninth Circuit has long recognized that class actions may be certified solely for the purpose of settlement.  *In re Heritage Bond Litig. v. U.S. Tr. Corp.*, 546 F.3d 667, 674-75 (9th Cir. 2008) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  Rule 23(a) sets forth the following four prerequisites: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  In addition, the class must meet one of the three requirements of Rule 23(b).  *See*

---

[11]   Patrick Browder gave testimony on behalf of himself and his former investment company, Browder Capital, LLC.

1   Rule 23; *In re UTStarcom, Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 48122, at *29-33 (N.D. Cal. May

2   12, 2010).  The proposed Class is defined in the Stipulation as follows:

> [A]ll Persons who purchased or otherwise acquired Rocket Fuel common stock between September 20, 2013 to August 5, 2014, inclusive, and were damaged thereby, excluding anyone named as a defendant in this action including the Company, Individual Defendants, Director Defendants, Underwriter Defendants; their respective former and current directors and officers, majority-owned legal affiliates, representatives, controlling persons, predecessors-in-interest, heirs, assigns, and any successors-in-interest; members of the immediate family of any defendant; and any entity in which any defendant has a majority interest.  Also excluded are those Persons who timely and validly request exclusion from the Class pursuant to the Notice.

*See* Stipulation at ¶1.3.  The proposed Class is identical to that proposed in the Consolidated

Complaint.  Courts routinely endorse the use of the class action device to resolve claims brought

under the federal securities laws.  *See, e.g., In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642

(C.D. Cal. 2009); *In re THQ, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753, at *8-9 (C.D. Cal. Mar.

22, 2002).  "[C]lass actions commonly arise in securities fraud cases as the claims of separate

investors are often too small to justify individual lawsuits, making class actions the only efficient

deterrent against securities fraud [and] [a]ccordingly, the Ninth Circuit and courts in this district hold

a liberal view of class actions in securities litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D.

150, 152-53 (N.D. Cal. 1991); *see Cooper*, 254 F.R.D. at 642 ("'The availability of the class action

to redress such frauds has been consistently upheld, in large part because of the substantial role that

the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.'").

This Action is no exception and Lead Plaintiffs submit that the proposed Class satisfies each of the

requirements of Rules 23(a) and 23(b)(3).  Defendants do not oppose certification of a class for

settlement purposes.

## 1.       Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

impracticable.  "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or

inconvenience of joining all members of the class."  *Katz v. China Century Dragon Media, Inc.*, 287

F.R.D. 575, 582-83 (C.D. Cal. 2012).  Indeed, classes consisting of 25 members have been held to be

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF                    NO. 4:14-CV-03998-PJH(JCS)

13

large enough to justify certification. *See Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *see In re STEC Inc.*, 2012 U.S. Dist. LEXIS 186180, at *11 (C.D. Cal. Mar. 7, 2012) ("There is no fixed number of class members that compels or precludes class certification. . . ."). Defendants have admitted that the Class contains more than one hundred members in Defendants' Amended Response to Request for Admissions No. 1. *See* Exhibit 1 attached to the Declaration of Ramzi Abadou In Support of Motion for Preliminary Approval of Settlement, dated April 25, 2017 (hereinafter, "Abadou Decl., Ex. __").

"'[T]he exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large.'" *In re STEC, Inc.*, 2012 U.S. Dist. LEXIS at *11; *see Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) ("'[W]here the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.'"). Rocket Fuel, which trades on the NASDAQ, had between 32 million and 42 million shares of stock outstanding during the Class Period. "The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year. It is likely that thousands of people made such purchases." *See Cooper*, 254 F.R.D. at 634. A class of this size is sufficiently numerous to make joinder impracticable. *Id.*; *see UTStarcom*, 2010 U.S. Dist. LEXIS 48122, at *14-15; *Yamner v. Boich*, 1994 U.S. Dist. LEXIS 20849, at *7-8 (N.D. Cal. Sept. 15, 1994). Defendants admitted as much in Defendants' Amended Response to Request for Admissions No. 2. *See* Abadou Decl., Ex. 1.

### 2.    Commonality

Rule 23(a)(2) is satisfied where class members share at least one common question of fact or law. *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). "The commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006). Further, "a few factual variations among the class grievances will not defeat

1    commonality so long as class members' claims arise from 'shared legal issues' or 'a common core of

2    salient facts.'"  *Cooper*, 254 F.R.D. at 634 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir.

3    2003)).  Here, the common questions of fact and law include: (i) whether Defendants violated the

4    Exchange Act; (ii) whether Defendants' statements omitted material facts necessary in order to make

5    the statements made, in light of the circumstances under which they were made, not misleading; (iii)

6    whether Defendants knew or recklessly disregarded that their statements were false and misleading;

7    (iv) whether the price of Rocket Fuel's securities was artificially inflated; and (v) the extent of

8    damage sustained by Class Members and the appropriate measure of damages.  *See Cooper*, 254

9    F.R.D. at 635 (finding common questions of law and fact as to "whether Defendants falsely

10   represented material facts," "whether Defendants knew that their statements were false and

11   misleading," and "whether the price of [defendant company's] publicly traded securities was

12   artificially inflated").

13           Defendants' alleged misconduct affected all members of the proposed Class in the same

14   manner, *i.e.*, Defendants' alleged false and misleading statements and omissions artificially inflated

15   the price of Rocket Fuel's securities during the Class Period.  *See, e.g.*, *In re VeriSign, Inc. Sec.*

16   *Litig.*, 2005 U.S. Dist LEXIS 10438, at *32 (N.D. Cal. Jan. 13, 2005) ("the issues common to the

17   class – namely, the nature and extent of Defendants' alleged misrepresentations and the like – are

18   predominant."); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002).

19           Defendants further admitted the presence of at least some common questions of law and

20   common questions of fact amongst the Class members.  *See* Abadou Decl., Ex. 1, at Defendants'

21   Amended Responses to Request for Admissions Nos. 3, 4, 6, 8, and 9.  Securities actions containing

22   common questions, such as the ones listed above, have repeatedly been held out as prime candidates

23   for class certification, and Defendants' responses further confirm that class certification for the

24   purposes of settlement is appropriate.

25                       **3.**      **Typicality**

26           The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the

proposed class representative are typical of the claims or defenses of other class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 U.S. Dist. LEXIS 95083, at *18 (C.D. Cal. Nov. 13, 2008).  "'[D]ifferences in the amount of damages, the size or manner of [stock] purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.'"  *In re Surebeam Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25022, at *18 (S.D. Cal. Dec. 31, 2003).

In other words, "'a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences'" between the claims of the named representative and other class members.  *Rivera*, 2008 U.S. Dist. LEXIS 95083, at *19.  Here, Lead Plaintiffs' claims arise from the same events or course of conduct that give rise to claims of other Class Members and are based on the same legal theory.  Lead Plaintiffs, like other Class Members, purchased or otherwise acquired Rocket Fuel securities during the Class Period at artificially inflated prices and suffered damages when Defendants' alleged misstatements and omissions were disclosed to investors.

Defendants' alleged misrepresentations caused the price of the Company's securities to decline during after-hours trading on August 5, 2014, when the Company issued guidance that was far below analysts' own estimates for the third quarter and full year of 2014, attributing same to customer concerns regarding poor inventory quality due to ad fraud. All Class Members were victims of this alleged common course of conduct throughout the Class Period, and, as Lead Plaintiffs alleged, sustained damages as a result. Thus, the proof that Lead Plaintiffs would present to establish their claims would prove the claims of the rest of the Class.  Additionally, Lead Plaintiffs are not subject to any unique defenses that could render one or more of them an atypical member of the Class.  Therefore, the Court should find typicality satisfied.  *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266-67 (N.D. Cal. 2011); *Cooper*, 254 F.R.D. at 635-36.

### 4.    Adequacy

The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing that

they will fairly and adequately protect the interests of the Class. The Ninth Circuit sets forth a two-prong test for Rule 23(a)(4)'s adequacy requirement: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Hootkins v. Chertoff*, 2009 U.S. Dist. LEXIS 3243, at *20 (C.D. Cal. Jan. 6, 2009) (citing *Hanlon*, 150 F.3d at 1020). As described above, Lead Plaintiffs has claims that are typical of and coextensive with those of the Class.

Lead Plaintiffs, like all Class Members, purchased or otherwise acquired Rocket Fuel securities at artificially inflated prices as a result of Defendants' alleged misleading statements and/or omissions. *See* Abadou Decl., Ex. 2, 3. Further, Lead Plaintiffs have retained counsel highly experienced in securities class action litigation and who have successfully prosecuted many securities and other complex class actions throughout the United States. *See* Abadou Decl., Ex. 4, 5. As detailed in Section II above, Lead Plaintiffs and their counsel have vigorously litigated this Action. Thus, Lead Plaintiffs are adequate representatives of the Class, and their counsel is qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

### 5. Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication

This case also satisfies Rule 23(b)(3), which requires that the proposed class representative establish that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013); *Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 131 S. Ct. 2179, 2184 (2011). When certifying a class for settlement purposes, the standards for satisfying "superiority" under Rule 23(b)(3) may be relaxed as the Court need not consider the difficulties of managing the class in any future litigation or at trial. *See, e.g., Ybarrondo v. NCO Fin. Sys., Inc.*, 2009 U.S. Dist. LEXIS 100502, at *17 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo*, 266 F.R.D. at 477. Courts have certified class actions for settlement purposes even where certification was, or likely would have been, denied for litigation purposes. *See, e.g., In re Initial Pub. Offering Sec.*

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

NO. 4:14-CV-03998-PJH(JCS)

17

*Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (citing *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194-95 (S.D.N.Y. 2005) (reasoning that the "predominance" and "manageability" concerns under Rule 23(b)(3) were intertwined and "because the litigation was no longer going to trial, manageability was no longer an issue, and the 'predominance defect [] no longer fatal'")).

"[C]ommon issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Further, the superiority of class actions in large securities cases is well recognized. *See Amchem Prods.*, 521 U.S. at 625 (common questions predominated in securities class action certified for settlement). As discussed above, there are common questions of law and fact that warrant class certification here. These questions predominate as Defendants' alleged conduct affected all Class Members in the same manner. "The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages." *Cooper*, 254 F.R.D. at 632. Issues relating to Defendants' liability are common to all Class Members. *Id.*[12]

Falsity, materiality, scienter, and loss causation are also issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).[13] Here, Defendants' alleged misstatements during the Class Period "affect[ed] [all] investors alike" and proof of falsity, materiality, scienter, and causation will "be made on a class-wide basis." *Schleicher*, 618 F.3d at 685, 687; *Cooper*, 254 F.R.D. at 641. As a result, common questions of law and fact predominate. In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied, and there are no issues that would prevent the Court from certifying this Class for settlement purposes, appointing

---

[12] *See also In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530 (N.D. Cal. 2009); *UTStarcom*, 2010 U.S. Dist. LEXIS 48122, at *29-31 (same); *Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation [sic] Defendants made during the Class Period and are common to the class.").

[13] *See also Cooper*, 254 F.R.D. at 640-41; *Amgen*, 133 S. Ct. at 1191 ("[T]he materiality of [defendants'] alleged misrepresentations and omissions is a question common to all members of the class. . .").

1  Lead Plaintiffs as class representative, and appointing Lead Counsel as counsel for the Class.  *See,*

2  *e.g.*, *Wahl v. Am. Sec. Ins. Co.*, 2011 U.S. Dist. LEXIS 59559, at *5-6 (N.D. Cal. June 2, 2011)

3  (class certified for settlement purposes).

### D.  The Proposed Notice to the Class is Adequate

5  Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable

6  under the circumstances, including individual notice to all members who can be identified through

7  reasonable effort."  *See also* Rule 23(e)(1) ("The court must direct notice in a reasonable manner to

8  all class members who would be bound by the propos[ed settlement].").  Notice "must 'generally

9  describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

10  investigate and to come forward and be heard.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir.

11  2012).[14]

12  The parties negotiated the form of Notice to be disseminated to all persons and entities

13  falling within the Class definition, and whose names and addresses have been or can be identified

14  from or through Rocket Fuel's shareholder lists.  In addition, the Claims Administrator will mail

15  copies of the Notice to entities which commonly hold securities in "street name" as nominees for the

16  benefit of their clients who are the beneficial purchasers of the securities.  The parties further

17  propose to supplement the mailed Notice with the Summary Notice of Pendency and Proposed

18  Settlement of Class Action, Motion for Attorneys' Fees and Litigation Expenses, and Settlement

19  Fairness Hearing ("Summary Notice")—an additional description of the Action and proposed

20  Settlement, to be published in *Investor's Business Daily* and transmitted over a national newswire

21  service (such as *PR Newswire*).[15]  Lead Counsel will also make copies of the Notice, Summary

---

[14]  *See also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 U.S. Dist. LEXIS 69799, at *29 (C.D. Cal. June 15, 2010) ("The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment."); *Immune Response*, 497 F. Supp. 2d at 1170 (same).

[15]  The proposed Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3, respectively.

1    Notice, and Proof of Claim available for download via the website maintained by the Claims

2    Administrator ("Website").  The Website address is set forth in the Notice and Summary Notice.  In

3    addition, the Website will provide the Consolidated Complaint and other important pleadings, as

4    well as important information regarding the Action and proposed Settlement.

5          Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all

6    parties and, for motions by class counsel, directed to class members in a reasonable manner."  The

7    proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead

8    Counsel will apply to the Court for attorneys' fees not to exceed 25% of the Settlement Amount, and

9    reimbursement of out-of-pocket expenses not to exceed $232,000.00, plus interest earned on both

10   amounts at the same rate earned on the Settlement Fund, to be paid from the Settlement Fund.  The

11   proposed Notice includes the information required by the PSLRA, as well as additional

12   information.[16]  The proposed Notice describes the proposed Settlement and sets forth, among other

13   things: (1) the nature, history, and status of the litigation; (2) the definition of the proposed Class and

14   who is excluded from the Class; (3) the reasons the parties have proposed the Settlement; (4) the

15   Settlement amount; (5) the estimated average recovery per damaged share; (6) the Class' claims and

16   issues; (7) the parties' disagreement over damages and liability; (8) the maximum amount of

17   attorneys' fees and expenses that Lead Counsel intends to seek in connection with final settlement

18   approval; (9) the $10,000.00 maximum amount of Lead Plaintiffs' request for reimbursement of

19   costs and expenses (including lost wages) in connection with representation of the Class; (10) the

20   _____

21   [16]      Specifically with respect to cases filed under the PSLRA, notices of settlements must state:
     (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined

22   in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average
     amount of damages per share that would be recoverable if the plaintiff prevailed on each claim

23   alleged under this chapter [], a statement from each settling party concerning the issue or issues on
     which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make []an

24   application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including
     the amount of such fees and costs determined on an average per share basis), and a brief explanation

25   supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or
     more representatives of counsel for the plaintiff class who will be reasonably available to answer

26   questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties
     are proposing the settlement."  The Court may require other information.  15 U.S.C. §78u-4(a)(7).

27   NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY            NO. 4:14-CV-03998-PJH(JCS)
     APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS

28   AND AUTHORITIES IN SUPPORT THEREOF
                                            20

1    plan for allocating the Settlement proceeds to the Class; and (11) the date, time, and place of the

2    final settlement hearing.

3           The proposed Notice discusses the rights Class Members have concerning the Settlement,

4    including to: (1) request exclusion and the manner for submitting such a request; (2) object to the

5    Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3)

6    participate in the Settlement and instructions on how to complete and submit a Proof of Claim to the

7    Claims Administrator.  The Notice also provides contact information for Lead Counsel, as well as

8    the postal address for the Court.  *See* Exhibit A-1 to the Stipulation.  A summary notice will also be

9    published.  *See* Exhibit A-3 to the Stipulation.

10          The notice program proposed in connection with the Settlement and the form and content of

11   the Notice, Summary Notice, and Proof of Claim therefore satisfy the requirements of Rule 23 and

12   the PSLRA.  Indeed, courts routinely find that comparable notice procedures meet the requirements

13   of due process, Rule 23, and the PSLRA.  *See, e.g.*, *In re Portal*, 2007 U.S. Dist. LEXIS 51794, at

14   *18-19 (dissemination of notice to all reasonably identifiable class members with summary notice

15   published in *Investor's Business Daily* approved as best notice practicable) (citing Manual for

16   Complex Litigation (Fourth) § 21.311 (2004) ("'Publication in magazines, newspapers, or trade

17   journals may be necessary if individual class members are not identifiable after reasonable

18   effort.'")).  Accordingly, in granting preliminary approval of the Settlement, Lead Plaintiffs similarly

19   request that the Court approve the proposed form and method of giving notice to the Class.

20          **E.  The Plan of Allocation Should Be Preliminarily Approved**

21          The Plan of Allocation[17] also warrants preliminary approval as it establishes specific

22   formulae to compute each participating Class Member's "Recognized Loss" as described in the

23   Notice.  It was created with the assistance of a consulting damages expert and reflects the

24   assumption that the price of Rocket Fuel common stock was artificially inflated throughout the Class

25

26   _____
     [17]     *See* Exhibit A-1 to the Stipulation at pp. 16-18.

1   Period and then corrected as a reaction to the disclosures at the end of the Class Period.  Claims will

2   be computed using the method described in the Notice, which is incorporated herein by reference.

3   The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net

4   Settlement Fund based upon each Authorized Claimant's Recognized Loss.

5          The Plan of Allocation complies with the requirements of case law governing the approval of

6   such allocation.  It has a "reasonable" and "rational basis," makes intra-class allocations based upon

7   the "relative strengths and weaknesses of class members' individual claims and the timing of

8   purchases and sales of the securities at issue," and was formulated by Lead Plaintiffs and Lead

9   Counsel, with the assistance of experts.  *In re Zynga Sec. Litig.*, 2015 U.S. Dist. LEXIS 145728, at

10  *43-44 (N.D. Cal. Oct. 27, 2015) ("Courts recognize that an allocation formula need only have a

11  reasonable, rational basis, particularly if recommended by experienced and competent counsel.").

12         Depending on: (i) the number of eligible shares purchased by investors who elect to

13  participate in the Settlement; and (ii) when those shares were purchased and sold, the average

14  distribution is estimated to be $0.15 per damaged share purchased in the Settlement Class Period,

15  before deduction of Court-approved fees and expenses described therein.[18]  Under the proposed

16  Settlement, the Claims Administrator will determine each Claimant's *pro rata* share of the cash

17  settlement in accordance with each Authorized Claimant's claim, based on each's Claim Form.[19]

18         Subject to Court approval, the Notice provides that if any funds remain in the Net Settlement

19  Fund by reason of uncashed distribution checks or otherwise, after the Claims Administrator has

20  made reasonable and diligent efforts to have Class Members, entitled to participate in the

21  distribution of the Net Settlement Fund, cash their distributions, and after a reasonable time

22  following the initial distribution, such funds will be used in the following fashion: (a) to pay any

23  amounts mistakenly omitted from the initial disbursement; (b) to pay any additional settlement

24

25  [18]      *See* Exhibit A-1 to the Stipulation at pp. 1, 8.

26  [19]      *See* Exhibit A-1 to the Stipulation at pp. 8, 19.

27  NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY          NO. 4:14-CV-03998-PJH(JCS)
    APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
28  AND AUTHORITIES IN SUPPORT THEREOF

administration fees, costs, and expenses, including those of Lead Counsel as may be approved by the Court; and (c) to make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $10.00, after payment of the estimated costs, expenses, or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible.  These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance will then be donated—again, subject to the Court's approval—to the Legal Aid Society of San Mateo.[20]  *See Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*, 2013 U.S. Dist. LEXIS 165909, at *22-23 (N.D. Cal. Nov. 21, 2013) ("An award to a legal services organization is often an appropriate use of *cy pres* funds."); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477, at *14, *49 (N.D. Cal. Apr. 22, 2010).

### F.  The Intended Request for Attorneys' Fees and Expenses

Lead Counsel intends to request an attorney fee award not to exceed 25% of the Settlement Amount ($787,500.00), plus out-of-pocket expenses up to $232,000.00 (plus interest on both amounts), respectfully suggesting that both amounts are reasonable.  *See* 15 U.S.C. §78u-4(a)(4) & (6).[21]  In complex securities litigation, courts in this Circuit have noted that the requested twenty-five percent figure ". . . is the 'benchmark' that district courts should award in common fund cases."  *In re Pac. Enters.*, 47 F.3d at 379 (noting the 25% benchmark, affirming an award of 33% of the recovery).[22]

---

[20]     *See* Exhibit A-1 to the Stipulation at p. 21.

[21]     The requested attorney fee award, as will be discussed in Lead Counsels' forthcoming brief to be submitted the Court in connection with the final approval hearing, represents a lodestar deflator.

[22]     *See also Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *19, *Id.* at *61-63 (same); *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, *70 (N.D. Cal. Feb. 11, 2016) (awarding the requested 25% attorney fee, noting it is the "presumptively reasonable benchmark amount in this Circuit.").

### G. The Proposed Claims Administrator

In connection with this motion, Lead Plaintiffs also request that the Court authorize the retention of A.B. Data, Ltd., ("A.B. Data") as Claims Administrator for the Settlement.  A.B. Data has extensive experience and is a nationally recognized notice and claims administration firm.  *See* Abadou Decl., Ex. 6.  A.B. Data has estimated that it will cost approximately $186,000.00 to fully administer the settlement of this case.  *Id.*  The amount is reasonable, representing slightly less than 6% of the total Settlement.

## V. PROPOSED SCHEDULE OF EVENTS AND FINAL APPROVAL PROCEEDINGS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain events.  Therefore, the parties suggest a schedule based on the following intervals:

| Event: | Proposed Time for Compliance: |
| --- | --- |
| Deadline for mailing Notice and Proof of Claim and Release[23] to all Class Members who can be identified with reasonable effort, and for posting same on a public access website (the "Notice Date"). | Not later than ten (10) business days after the Court's signing of the Preliminary Approval Order (*See* Preliminary Approval Order, ¶7). |
| Deadline for the Claims Administrator to publish the Summary Notice[24] in the national edition of *Investor's Business Daily* and once over a national newswire service. | Not later than fourteen (14) calendar days after the Notice Date (*See* Preliminary Approval Order, ¶8). |
| Deadline for Lead Plaintiffs to serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication. | At least seven (7) calendar days prior to the Settlement Hearing (*See* Preliminary Approval Order, ¶9). |
| Deadline for nominees that purchased stock for the beneficial ownership of Class Members to either: (i) send Notice and Proof of Claim forms to beneficial owners; or (ii) send a list of names and addresses of beneficial owners to the Claims Administrator. | Within ten (10) days after receipt of the Notice and Proof of Claim forms (*See* Preliminary Approval Order, ¶10). |
| Deadline for Class Members to submit Proof of Claim and Release forms. | Postmarked or submitted electronically no later than one hundred and twenty (120) days after |

---

[23]     *See* Exhibits A-1, A-2 to the Stipulation.

[24]     *See* Exhibit A-3 to the Stipulation.

| Event: | Proposed Time for Compliance: |
|---|---|
| | the Notice Date (*See* Preliminary Approval Order, ¶12). |
| Deadline for Class Members to submit a Request for Exclusion, if desired. | Postmarked no later than ninety (90) days after the Notice Date (*See* Preliminary Approval Order, ¶14). |
| Deadline for Lead Counsel to provide Defendants' Counsel copies of all Requests for Exclusion or revocations of same. | Not less than fourteen (14) days prior to the Settlement Hearing (*See* Preliminary Approval Order, ¶15). |
| Deadline for objectors to either deliver written objections by hand or postmarked/sent by First Class mail. | Postmarked no later than ninety (90) days after the Notice Date (*See* Preliminary Approval Order, ¶16). |
| Deadline to submit opening briefs and supporting documents in favor of the Settlement, Plan of Allocation, and any application by Lead Counsel for attorneys' fees and expenses. | Not later than seventy-five (75) calendar days after the Notice Date (*See* Preliminary Approval Order, ¶18). |
| Deadline to submit replies to any objections to the Settlement, Plan of Allocation, or award of attorneys' fees and expenses. | Not later than one hundred and five (105) calendar days after the Notice Date (*See* Preliminary Approval Order, ¶18). |
| Settlement Hearing. | At least one hundred and twenty (120) days after the Court's signing of the Preliminary Approval Order (See Preliminary Approval Order, ¶4). |

## VI.   CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully submit that the proposed Settlement is a fair and reasonable resolution and warrants this Court's preliminary approval.   Lead Plaintiffs request that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice submitted herewith, which will: (i) preliminarily approve the proposed Settlement; (ii) preliminarily certify the proposed Class for settlement purposes; (iii) approve the form and manner of Notice; and (iv) schedule a hearing to consider final approval of the Settlement and related matters.

Dated:  April 25, 2017                          Respectfully submitted,

                                                         **KAHN SWICK & FOTI, LLP**

                                                         By:     */s/ Ramzi Abadou*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ramzi Abadou (SBN 222567)
912 Cole Street, #251
San Francisco, CA 94117
Telephone: 504-455-1400
Facsimile: 504-455-1498
ramzi.abadou@ksfcounsel.com

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
Alexander Burns (admitted *pro hac vice*)
Scott St. John (admitted *pro hac vice*)
206 Covington Street
Madisonville, LA 70447
Telephone: 504-455-1400
Facsimile: 504-455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
scott.st.john@ksfcounsel.com

Dated:  April 25, 2017

**KAPLAN FOX & KILSHEIMER, LLP**


By:  ___/s/ Laurence D. King___
Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

**KAPLAN FOX & KILSHEIMER, LLP**
Joel B. Strauss (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
jstrauss@kaplanfox.com
dhall@kaplanfox.com

*Lead Counsel for Lead Plaintiffs Oklahoma*
*Firefighters Pension and Retirement System,*
*Browder Capital, LLC, and Patrick Browder*

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

NO. 4:14-CV-03998-PJH(JCS)

26

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2      I attest that concurrence in the filing of this document has been obtained from the other

3  signatories.  I declare under penalty of perjury under the laws of the United States of America that

4  the foregoing is true and correct.

5      Executed this 25th day of April, 2017, at San Francisco, California.

6

7                         */s/Ramzi Abadou*
                             RAMZI ABADOU

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on April 25, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                    */s/Ramzi Abadou*
                    RAMZI ABADOU