Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mchoi@kaplanfox.com*

Ramzi Abadou (SBN 222567)
**KAHN SWICK & FOTI, LLP**
912 Cole Street, # 251
San Francisco, CA 94117
Telephone: 504-455-1400
Facsimile: 504-455-1498
*ramzi.abadou@ksfcounsel.com*

[Additional counsel appear on signature page]

*Lead Counsel for Lead Plaintiffs Oklahoma*
*Firefighters Pension and Retirement System,*
*Browder Capital, LLC, and Patrick Browder*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| In re ROCKET FUEL, INC. SECURITIES LITIGATION | Case No. 4:14-CV-03998-PJH (JCS) |
| | **CONSOLIDATED CLASS ACTION** |
| This Document Relates To:<br><br>ALL ACTIONS | **NOTICE OF MOTION AND UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Phyllis J. Hamilton<br>Date: October 11, 2017<br>Time: 9:00 a.m.<br>Courtroom: 3, 3rd Floor |

Case No. 4:14-CV-03998-PJH (JCS)

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 11, 2017, at 9 a.m., in Courtroom 3 of the United States District Court for the Northern District of California, U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable Phyllis Hamilton presiding, Lead Plaintiffs and Lead Counsel will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure awarding: (i) attorneys' fees to Lead Counsel; (ii) reimbursement of $228,384.59 in out-of-pocket expenses that Lead Counsel and Plaintiffs' counsel incurred in connection with prosecuting and resolving the above-captioned Action, plus interest; and (iii) reimbursement to the Lead Plaintiff Patrick Browder for expenses reasonably incurred in connection with representing the Class throughout this Action.[1]

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Laurence D. King and Ramzi Abadou in Support of Final Approval of Settlement and Plan of Allocation and Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, dated August 28, 2017, and the exhibits thereto, the Stipulation filed previously with the Court, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.[2]

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Lead Counsel should be awarded 25% of the Settlement Fund ($787,500.00) they created;

2. Whether Lead Counsels' expenses should be reimbursed; and

3. Whether Lead Plaintiff Patrick Browder's request for reimbursement of costs and expenses related to his work on behalf of the Class should be approved.

---

[1]    Capitalized terms not defined herein shall have those meanings ascribed to them in the Stipulation and Agreement of Settlement, dated April 25, 2017 (the "Stipulation") (ECF No. 221).

[2]    This motion is currently unopposed. The deadline for filing an objection to Lead Counsel's request for attorneys' fees and reimbursement of expenses, including reimbursement to Lead Plaintiff, is September 12, 2017.

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................ 1

II.  HISTORY OF THE ACTION ............................................................................ 4

III.  AWARDS OF ATTORNEYS FEES UNDER THE PSLRA ............................. 4

    A.  The Private Securities Litigation Reform Act ("PSLRA") Codified The Percentage Of Recovery Approach For Awarding Fees In Common Funds Cases ............................................................................ 4

    B.  The Requested Fee Percentage Is Reasonable Under The Percentage Method, The Lodestar Method And The *Vizcaino* Factors ......................................................................................................... 6

        1.  The Results Achieved When Viewed in Light of the Risks of Further Litigation .......................................................................... 7

        2.  The Risk of Litigation ................................................................... 7

        3.  The Skill Required and the Quality of Representation ................. 8

        4.  The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel .............................................................. 9

        5.  Awards in Similar Cases Support the Request Here .................... 11

        6.  An Analysis of Lead Counsels' Lodestar Supports the Requested Fee Award .................................................................. 12

    C.  Reaction Of The Class To The Settlement To Date ................................. 12

IV.  REIMBURSEMENT OF LITIGATION EXPENSES ....................................... 13

V.  LEAD PLAINTIFF PATRICK BROWDER SHOULD BE AWEARDED HIS REASONABLE COSTS AND EXPENSES ................................................ 15

VI.  CONCLUSION ................................................................................................. 16

Case No. 4:14-CV-03998-PJH (JCS)

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009).................................................................................................. 8

*Blum v. Stenson*,
  465 U.S. 886 (1984) .............................................................................................................. 4

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)........................................................................................................... 4, 5

*Browne v. Am. Honda Motor Co.*,
  2010 U.S. Dist. LEXIS 144823 (C.D. Cal. Oct. 5, 2010) .......................................................... 11

*Buccellato v. AT&T Operations, Inc.*,
  2011 U.S. Dist. LEXIS 85699 (N.D. Cal. June 30, 2011) .............................................. 11, 12

*Destefano v. Zynga, Inc.*,
  2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016)...................................................... 4, 9

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).............................................................................................................. 5

*Fernandez v. Vict. Secret Stores, LLC*,
  2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ........................................ 6, 9, 11, 13

*Glass v. UBS Fin. Servs., Inc.*,
  331 Fed. App'x 452 (9th Cir. 2009)...................................................................................... 4, 7

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015)................................................................................................ 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014).......................................................................................................... 2, 8

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 U.S. Dist. LEXIS 151498 (D. Nev. Oct. 19, 2012)...................................................... 9, 11

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
  818 F.3d 775 (8th Cir. 2016)................................................................................................... 2

*In re Broadcom Corp. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sept. 12, 2005).......................................................... 9

*In re Copley Pharm., Inc.*,
  1 F. Supp. 2d 1407 (D. Wyo. 1998) ........................................................................................ 5

*In re CV Therapeutics, Inc., Sec. Litig.*,
  2007 U.S. Dist. LEXIS 98244 (N.D. Cal. Apr. 4, 2007) ........................................................ 11

*In re DJ Orthopedics, Inc. Sec. Litig.*,
  2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21, 2004)........................................................ 7

*In re Equity Funding Corp. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ....................................................................................... 8

- iii -                                          Case No. 4:14-CV-03998-PJH (JCS)

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**TABLE OF AUTHORITIES**
(cont.)

Page(s)

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .............................. 11, 12, 15

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005)..................................... 7, 8, 11

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................ 7

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)........................................... 9, 11, 13, 15

*In re Infospace, Inc. Sec. Litig.*,
330 F. Supp. 2d 1203 (W.D. Wash. 2004) ......................................................... 15

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1995) ................................................................. 13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)...................................................................... 11, 15

*In re Nucoa Real Margarine Litig.*,
2012 U.S. Dist. LEXIS 189901 (C.D. Cal. June 12, 2012) ...................................... 11

*In re Nuvelo, Inc. Sec. Litig.*,
2011 U.S. Dist. LEXIS 72260 (N.D. Cal. July 6, 2011) ........................................... 11

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................... passim

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005).................................................................................. 5, 12

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006) ............................................................................ 5

*In re Skilled Healthcare Grp, Inc. Sec. Litig.*,
2011 WL 280991 (C.D. Cal. Jan. 26, 2011) ........................................................... 12

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................... 5

*In re Veeco Instruments Sec. Litig.*,
2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007) ........................................ 10

*In re Veritas Software Corp. Sec. Litig.*,
2005 U.S. Dist. LEXIS 30880 (N.D. Cal. Nov. 15, 2005)...................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)..................................................................... 5, 6, 7, 9

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)..................................................................................................... 10

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Jenson v. First Trust Corp.*,
2008 U.S. Dist. LEXIS 45078 (C.D. Cal. June 9, 2008) ...................................................... 3, 11

*Kasper v. AAC Holdings, Inc.*,
2017 U.S. Dist. LEXIS 109608 (M.D. Tenn. July 14, 2017)...................................................... 2

*Knight v. Red Door Salons, Inc.*,
2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009)........................................................... 13

*Mark v. Valley Ins. Co.*,
2004 U.S. Dist. LEXIS 20602 (D. Or. Oct. 6, 2004) ................................................................. 8

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .................................................................................................................... 6

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989)................................................................................................. 5, 11

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F. 2d 1301 (9th Cir. 1990)............................................................................................. 5, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................................... 5

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ........................................................................................................ 4

*Trs. v. Greenough*,
105 U.S. 527 (1882) .................................................................................................................... 4

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)....................................................................................... 4, 6, 7, 12

*Weeks v. Kellogg Co.*,
2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) ................................................. 6, 11

*West v. Circle K Stores, Inc.*,
2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006) .......................................................... 6

**Statutes**

15 U.S.C. §78u-4(a) ................................................................................................................ 5, 15

**Rules**

Federal Rules of Civil Procedure
Rule 23(g) ................................................................................................................................... 2

**Treatise**

MANUAL FOR COMPLEX LITIGATION, Fourth, § 14.121 at 187 (2004) ............................................ 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Lead Plaintiffs and Counsel respectfully submit this Memorandum of Points and Authorities in support of their motion for an award of attorneys' fees and for reimbursement of litigation expenses.  In consideration of Lead Counsel's efforts, and the recovery obtained for the Class in light of the significant risks discussed herein, Lead Counsel respectfully moves the Court for: (i) an award of attorneys' fees in the amount of 25% of the Settlement Fund ($787,500.00), plus interest; (ii) reimbursement of expenses reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving the Action in the amount of $228,384.59, plus interest; and (iii) reimbursement to Lead Plaintiff Patrick Browder in the amount of $5,769.00 for costs and expenses incurred in connection with his representation of the Class.  Lead Plaintiffs and Counsel incorporate by reference herein the pleadings and declarations filed in support of the Motion for Preliminary Approval of Settlement, including Lead Plaintiffs' Memorandum of Law in Support of Preliminary Approval of Settlement, filed April 25, 2017 (ECF No. 220).[3]

## I.    INTRODUCTION

Due to their considerable efforts in this novel securities case, Lead Counsel have obtained a solid result in this Action − a Settlement providing for a payment of $3,150,000.00 to the Class. This recovery would not have been possible without the skill, tenacity and advocacy of Lead Counsel, who devoted several years to the investigation, vigorous prosecution and settlement of this Action on a wholly contingent basis.

Lead Counsel and their agents: (i) conducted an extensive factual investigation into the alleged fraud, including a thorough review of publicly-available information such as the Company's Securities and Exchange Commission ("SEC") filings, financial statements and press releases, analysts' reports and notes issued by securities firms, news media, pleadings in other actions in which Defendants are/were a party; (ii) conducted detailed investigative interviews of

---

[3]    The Court is respectfully referred to the accompanying Declaration of Laurence D. King and Ramzi Abadou in Support of Final Approval of Settlement and Plan of Allocation, and Motion for Approval of Award of Attorneys' Fees and Reimbursement of Litigation Expenses, dated August 28, 2017 (hereinafter, "Lead Counsel Decl."), and its exhibits as referenced herein, for a more detailed history of the litigation and the factors bearing on the reasonableness of the Settlement, Plan of Allocation, and Award of Attorneys' Fees and Expenses.

witnesses, including numerous employees of the Company and extensive discovery, including the review of approximately 150,000 pages of documents produced by parties and non-parties; (iii) prepared two comprehensive amended complaints detailing Defendants' violations of the federal securities laws; (iv) conducted exhaustive research of the law applicable to the Class' claims and the defenses thereto; (v) opposed various different Defendants' motions to dismiss; (vi) prepared and briefed a motion for class certification with the assistance of an economics expert who sat for deposition; and (vii) engaged in vigorous settlement negotiations with Defendants' counsel, including a formal day-long mediation session before an experienced JAMS mediator, Jed D. Melnick, Esq.

In light of the considerable risks here, the Settlement represents a significant recovery for the Class.  Lead Plaintiffs faced substantial risks in proving the elements of their securities fraud claims.  *See* Lead Counsel Decl., ¶¶ 5-6, 108-109, 144-154.  Lead Plaintiffs also faced serious risks in proving that the insider defendants made the misleading statements at issue, and the Class's full amount of damages.  *Id.*  There was also real risk that the Court or a jury would find that only a small fraction of the total damages was attributable to the claims (as opposed to claims that were dismissed, market factors and/or confounding information), thus significantly reducing any recovery for the Class.  Indeed, by the time Lead Plaintiffs agreed to resolve this matter, it was a single-statement case with a close to fully-briefed class certification motion pending that posed profound obstacles related to price impact under *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014), as applied by the Eighth Circuit in *IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775 (8th Cir. 2016).  Nevertheless, Plaintiffs and Lead Counsel were able to secure a favorable $3.15 million recovery.

Accordingly, Lead Counsel respectfully submit that the Settlement is a testament to Counsels' hard work, expertise in the hard realities of federal class action securities litigation, ingenuity and the quality of legal representation.  *See, e.g.*, *Kasper v. AAC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 109608 (M.D. Tenn. July 14, 2017) (certifying Kahn Swick & Foti, LLC and Kaplan Fox & Kilsheimer LLP as lead counsel pursuant to Fed. R. Civ. P. 23(g)).  Given the

recovery obtained, the amount and complexity of the work involved during the pendency of the litigation, the skill and expertise required to prosecute and resolve the claims asserted, and the substantial risks that Lead Counsel undertook in this Action, Lead Counsel respectfully submit that the 25% Ninth Circuit benchmark fee request is fair and reasonable.  *See Jenson v. First Trust Corp.*, 2008 U.S. Dist. LEXIS 45078, at *10 (C.D. Cal. June 9, 2008).[4]  This fee request is also strongly supported by the Lead Plaintiffs.  *See* Lead Counsel Decl., Ex. A (Joint Declaration of Oklahoma Firefighters Pension and Retirement System and Patrick Browder In Support of Their Motion for Final Approval of Settlement and Plan of Allocation, and Motion for Approval of Attorneys' Fees and Expenses, dated August 21, 2017), at ¶¶ 8-9.

In addition, Lead Counsel and Plaintiffs submit that the request for reimbursement of expenses in the amount of $228,384.59 is fair and reasonable and warrants approval by the Court. Lead Counsel Decl., ¶¶ 157-166.  Lead Counsel also respectfully submit that the request for reimbursement to Lead Plaintiff Patrick Browder for costs and expenses in the amount of $5,769.00 directly relating to his representation of the Class in this Action similarly warrants the Court's approval.  *See id.*, ¶ 167; *see also id.*, Ex. E (Lead Plaintiff Patrick Browder's Declaration in Support of Application for Reimbursement of Costs and Expenses in Connection with his Representation of the Class and in Support of the Settlement, dated August 21, 2017 (hereinafter "Browder Decl.")), at ¶¶ 4-9.  It is also worth noting that, following the dissemination of the Notice to over 41,500 potential Class Members and nominees, not a single objection has yet been filed challenging the request for attorneys' fees and expenses set forth in the Notice.[5]  The deadline to object to any aspect of the Settlement, including the request for fees and expenses, is September 12,

---

[4]     As discussed below, the 25% fee request results in a significant lodestar **deflator** to Lead Counsel.

[5]     *See* Lead Counsel Decl., Ex. B (Declaration of Eric J. Miller Regarding Compliance with Notice Requirement in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, dated August 28, 2017 (the "Miller Decl.")), at ¶¶ 10, 17.  The Miller Declaration is submitted on behalf of the Court-authorized claims administrator for the Settlement, A.B. Data, Ltd.  The Notice advises recipients that Lead Counsel will be applying to the Court for attorneys' fees not to exceed 25% of the Settlement Amount and reimbursement of certain expenses not to exceed $232,000.00, plus interest earned on both amounts at the same rate earned on the Settlement Fund and that Lead Plaintiff may seek reimbursement of his reasonable costs and expenses not to exceed $10,000.00.

2017.  In sum, as set forth below, "the risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation.  Lead Counsel submits that the risks were particularly high here because [ ] there was no government investigation or accounting restatement—ordinarily, hallmarks of securities fraud that might suggest a case has merit.…"  *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *58 (N.D. Cal. Feb. 11, 2016).

## II.    HISTORY OF THE ACTION

Lead Counsel respectfully refers the Court to the accompanying Lead Counsel Declaration for a detailed description of the procedural history of the Action, the claims asserted, the investigation and discovery undertaken, the Parties' extensive motion practice, the negotiations and mediation process resulting in the Settlement and the risks and uncertainties involved in prosecuting this Action through trial.  *See generally* Lead Counsel Decl., ¶¶ 15-111.

## III.   AWARDS OF ATTORNEYS FEES UNDER THE PSLRA

### A.    The Private Securities Litigation Reform Act ("PSLRA") Codified The Percentage Of Recovery Approach For Awarding Fees In Common Funds Cases

In common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 903 n.16 (1984).  Courts have long held that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Trs. v. Greenough*, 105 U.S. 527, 533-34 (1882).  Although district courts retain discretion over whether to apply the percentage-of-recovery approach or lodestar method in determining attorneys' fees in a common fund case, the percentage-of-recovery method is the prevailing standard in this Circuit.  *See Glass v. UBS Fin. Servs., Inc.*, 331 Fed. App'x 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six (6) Mexican Workers v. Ariz. Citrus*

- 4 -                                         Case No. 4:14-CV-03998-PJH (JCS)

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990); *Paul*, *Johnson*, *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

Indeed, the Ninth Circuit holds that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *see also Boeing*, 444 U.S. at 478; *Graulty*, 886 F.2d at 271; *In re OmniVision Techs.*, *Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). The PSLRA itself expressly codified the percentage-of-recovery approach for awarding fees (*see* 15 U.S.C. §78u-4(a)(6)), and by its plain terms provides that the "PSLRA limits any award of attorneys' fees and expenses to a '*reasonable percentage*' of any recovery." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006) (emphasis added) (citing 15 U.S.C. § 78u-4(a)(6)). Thus, under the PSLRA, "Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions." *See In re Telik*, *Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

Fee awards in meritorious cases such as this also promote private enforcement of, and compliance with, the federal securities laws which "seek to maintain public confidence in the marketplace…. They do so by deterring fraud, in part, through the availability of private securities fraud actions." *Dura Pharm.*, *Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (citations omitted); *Tellabs*, *Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308, 318 (2007). The percentage-of-recovery method also most fairly correlates counsel's compensation with the benefit conferred upon the class. *See OmniVision*, 559 F. Supp. 2d at 1046 (citing authorities that have "described thoroughly" the advantages of the percentage method). It closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery and also decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar. "Simply put, it is much easier and far less demanding of scarce judicial resources to calculate a percentage of the fund fee than to review hourly billing practices over a long, complex litigation." *In re Copley Pharm.*, *Inc.*, 1 F. Supp. 2d 1407, 1411 (D. Wyo. 1998).

- 5 -                                                   Case No. 4:14-CV-03998-PJH (JCS)

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Rather than engaging in a full-blown lodestar analysis, courts that employ the percentage-of recovery method often utilize a lodestar "cross-check" on the reasonableness of the requested fee. *Vizcaino*, 290 F.3d at 1050 (affirming use of percentage method in calculating fees and application of lodestar method as a cross-check); *West v. Circle K Stores*, *Inc*., 2006 U.S. Dist. LEXIS 76558, at *23-25 (E.D. Cal. Oct. 19, 2006) (applying percentage method with lodestar cross-check). "[T]he lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation." *Fernandez v. Vict. Secret Stores, LLC*, 2008 U.S. Dist. LEXIS 123546, at *48 (C.D. Cal. July 21, 2008) (citation omitted). Instead, the lodestar calculation "serves as a point of comparison by which to assess the reasonableness of a percentage award." *Id.* The percentage-of-recovery approach is also consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery. *See generally Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *see also* MANUAL FOR COMPLEX LITIGATION, Fourth, § 14.121 at 187 (2004) (commenting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases").

As a result, the "lodestar can be approximate and still serve its purpose." *Vict. Secret*, 2008 U.S. Dist. LEXIS 123546, at *48; *see also Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *95 (C.D. Cal. Nov. 23, 2011) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award."). At the end of the day, no matter which method is utilized, the fees awarded must be fair and reasonable under the circumstances of a particular case. *See Wash. Pub.*, 19 F.3d at 1294 n.2.

### B.   The Requested Fee Percentage Is Reasonable Under The Percentage Method, The Lodestar Method And The *Vizcaino* Factors

Courts consider the following factors to determine whether a fee is fair and reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50. Lead Counsel respectfully submit that an

analysis of the *Vizcaino* factors, as well as an analysis under the percentage-of-recovery and lodestar methods, demonstrates that the present fee and expense request is reasonable and appropriate and should be approved by the Court.

### 1. The Results Achieved When Viewed in Light of the Risks of Further Litigation

The results achieved and the risks of further litigation are important factors in determining an appropriate fee award. *See OmniVision*, 559 F. Supp. 2d at 1046; *UBS*, 331 Fed. App'x at 456-57; *In re DJ Orthopedics*, *Inc*. *Sec*. *Litig.*, 2004 U.S. Dist. LEXIS 11457, at *20 (S.D. Cal. June 21, 2004). Here, through its extensive efforts during the pendency of this Action (as detailed at length in the Lead Counsel Declaration, *see generally* ¶¶ 22-106), Lead Counsel obtained a $3.15 million recovery for the Class. This Settlement confers an immediate benefit on the Class in contrast to the delays, costs and uncertainty of continued litigation. The result achieved here is even more significant given the various risks involved in this Action. As detailed below and in the Lead Counsel Declaration, this Settlement was obtained in the face of substantial legal challenges and risks, particularly with respect to the elements of scienter, transaction causation and damages.

### 2. The Risk of Litigation

In a case undertaken on a contingent fee basis, the risk of litigation is a key factor in determining an appropriate fee award. *See*, *e.g*., *OmniVision*, 559 F. Supp. 2d at 1047; *Wash*. *Pub*., 19 F.3d at 1299-301; *In re Heritage Bond Litig*., 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of costs, is a factor in determining the appropriateness of counsel's proper fee award."). While courts have historically recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings make it abundantly clear that the risk of no recovery has increased significantly since the PSLRA's enactment. *See In re Ikon Office Solutions*, *Inc*. *Sec*. *Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

1  Had the Action proceeded, there existed numerous material uncertainties concerning

2 liability, class certification and damages, in addition to the risk that, even if Lead Counsel was

3 successful in proving liability and damages at trial, any recovery would be delayed by years of

4 appeals.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009)

5 ("[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller

6 and smaller over the years by judicial decree and congressional action.") (O'Connor, J.).  The risk

7 that the Court would deny class certification here was especially real given the price-impact related

8 arguments Defendants raised under *Halliburton*, in their opposition to class certification with the

9 assistance of an expert.

### 3. The Skill Required and the Quality of Representation

11  The skill and quality of legal counsel also support the requested fee award.  *See Mark v.*

12 *Valley Ins. Co.*, 2004 U.S. Dist. LEXIS 20602, at *4 (D. Or. Oct. 6, 2004).  "The 'prosecution and

13 management of a complex national class action requires unique legal skills and abilities.'  This is

14 particularly true in securities cases because the [PSLRA] makes it much more difficult for securities

15 plaintiffs to get past a motion to dismiss."  *OmniVision*, 559 F. Supp. 2d at 1047 (citations omitted);

16 *see also Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *39-40.

17  Lead Counsel are leading law firms in class action securities litigation.  *See* ECF Nos. 220-

18 5, 220-6 (firm résumés).  Given the complexity of the issues presented in this Action, highly skilled

19 securities counsel was required to successfully represent the Class by barely defeating Defendants'

20 motion to dismiss (*i.e.*, Plaintiffs were left with a single actionable statement and no claims under

21 section 11 of the Securities Act of 1933) and nevertheless obtained a favorable recovery.  The

22 quality of opposing counsel is also important in evaluating the quality of the services rendered.  *See*

23 *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (recognizing that

24 "plaintiffs' attorneys in this class action have been up against established and skillful defense

25 lawyers, and should be compensated accordingly").  Here, Defendants were represented by two

26 highly experienced and skilled defense firms: (i) Wilson Sonsini Goodrich & Rosati, P.C.; and

27 (ii) Orrick Herrington & Sutcliffe, LLP at various stages of the litigation.  Lead Counsel Decl.,

¶ 143.

These firms vigorously defended their clients at every turn and, in the face of this formidable opposition, Lead Counsel developed their case and succeeded in overcoming, in part, robust motions to dismiss and persuading Defendants to agree to a favorable financial recovery for the Class. *Zynga*, 2016 U.S. Dist. LEXIS 17196, at \*59.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

It is an established practice in the private legal market to reward attorneys for taking on the serious risk of non-payment by permitting a fee award that reflects a premium over their normal hourly rates for prevailing in contingency cases. Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are well-accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. *Vict. Secret*, 2008 U.S. Dist. LEXIS 123546, at \*46-48 ("The contingency fee agreement into which plaintiffs and counsel entered reflects the mechanism available the private legal market to compensate counsel for taking the risk of non-payment…. Given the risks assumed by class counsel, the court concludes that the percentage fee must encompass some risk multiplier to compensate counsel.").[6]

Here, Lead Counsel have not received any compensation during the course of this litigation – investing over 6618 hours for a total lodestar of $3,727,285.50, and expending tens of thousands of dollars to pay for expenses incurred in prosecuting and resolving this case. *See* Lead Counsel Decl., ¶¶ 134-141, 157-166; *see also id.*, Ex. C (Declaration of Laurence D. King of Kaplan Fox & Kilsheimer LLP in Support of Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, dated August 28, 2017 (hereinafter "King Decl.")), at

---

[6] *See also Wash. Pub.*, 19 F.3d at 1299-1300 (same); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 U.S. Dist. LEXIS 151498, at \*13 (D. Nev. Oct. 19, 2012) ("Plaintiffs' counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis. 'It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.'"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) (same); *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41993, at \*21 (C.D. Cal. Sept. 12, 2005) (same); *OmniVision*, 559 F. Supp. 2d at 1047 (same).

¶¶ 5-8, and Exs. 1, 2; *see also id.*, Ex. D (Declaration of Ramzi Abadou of Kahn Swick & Foti, LLP in Support of Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, dated August 28, 2017 (hereinafter "Abadou Decl.")), at ¶¶ 5-8, and Exs. 1, 2.  Lead Counsel has continued to perform substantial legal work on behalf of the Class since a settlement was reached and additional resources will be spent assisting Class Members with their Proofs of Claim and related inquiries, working with the claims administrator to ensure the smooth progression of claims processing, and eventually working on a motion for distribution of the Net Settlement Funds to the Class.  *See*, *e.g*., Lead Counsel Decl., ¶ 139.  In addition, Lead Counsel have borne the entirety of risk of prosecuting this Action − including adequately pleading liability and surviving numerous and lengthy dispositive motions.  Lead Counsel understood from the outset that they were embarking on complex, expensive and potentially lengthy litigation, which would require the investment of tens of thousands of dollars in costs and expenses, as well as thousands of hours of attorney time, with no guarantee of ever being compensated.

Lead Counsel also understood that the Defendants would (and, in fact, did) retain large, highly experienced defense firms to mount a strong defense.  In undertaking this risk, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of this Action.  "[T]he risk of non-payment in complex cases, such as this one, is very real."  *In re Veeco Instruments Sec. Litig.*, 2007 U.S. Dist. LEXIS 85554, at *20 (S.D.N.Y. Nov. 7, 2007).  The commencement of a class action is no guarantee of success; these cases are not always settled, nor are plaintiffs' lawyers always successful, especially in the post-PSLRA era of securities litigation.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (Defendants were entitled to a new trial on loss causation and whether the three executives "made" certain of the false statements under the narrow definition provided under *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)).  Indeed, there have been numerous hard-fought instances where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits,

many years of excellent professional efforts of members of the plaintiffs' bar produced no fee to plaintiffs' counsel. *See* Lead Counsel Decl., ¶¶ 144-154. Thus, there existed a very real risk that Lead Counsel (and the Class) would invest substantial resources and efforts and receive nothing. *See Browne v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 144823, *38-39 (C.D. Cal. Oct. 5, 2010).

### 5.  Awards in Similar Cases Support the Request Here

The Ninth Circuit recognizes 25% of a fund recovered for the benefit of a class as the "benchmark" for fee awards in common fund cases. *See Graulty*, 886 F.2d at 272-73; *Ariz. Citrus*, 904 F.2d at 1311; *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *25; *Buccellato v. AT&T Operations, Inc.*, 2011 U.S. Dist. LEXIS 85699, at *2-3 (N.D. Cal. June 30, 2011). Indeed, "in most common fund cases, the award exceeds that benchmark." *OmniVision*, 559 F. Supp. 2d at 1047; *see Int'l Game Tech.*, 2012 U.S. Dist. LEXIS 151498, at *12-13 ("the benchmark should be thirty percent rather than the twenty-five percent recommended"); *Immune Response*, 497 F. Supp. 2d at 1176 ("a proposed fee of 25% is consistent, if not below, the average award in similar complex actions"); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *58-59 n.12 (C.D. Cal. June 10, 2005) (awarding fee award of 33⅓% because "courts have consistently approved of attorney fee awards over the 25% benchmark").

Indeed, ample precedent exists in this Circuit and Court for granting fees to plaintiffs' counsel that are greater than the 25% fee requested herein. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming award of one-third of the total recovery); *In re Nucoa Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901, at *108 (C.D. Cal. June 12, 2012) (awarding attorneys' fees of "45 percent of the total monetary amount to be paid by [defendant] to resolve the case."); *Kellogg*, 2011 U.S. Dist. LEXIS 155472, at *110 ("[t]he 30 percent figure is reasonable in light of awards in other common fund cases."); *Vict. Secret*, 2008 U.S. Dist. LEXIS 123546, at *54-55 (awarding 34% of the value of the common fund).[7]

---

[7]     *See also Jenson*, 2008 U.S. Dist. LEXIS 45078, at *10 (awarding 33% of $8.5 million fund); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. Apr. 4, 2007) (awarding 30% of settlement fund); *In re Nuvelo, Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 72260, at *7-11 (N.D. Cal. July 6, 2011) (approving 30 percent fee).

### 6. An Analysis of Lead Counsels' Lodestar Supports the Requested Fee Award

A cross-check of the requested fee with Lead Counsels' lodestar further demonstrates the proposed fee request's reasonableness. *See Vizcaino*, 290 F.3d at 1050-51; *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *71-73. As detailed herein and in the accompanying Abadou and King Declarations, the work undertaken by Lead Counsel wholly supports the Court's approval of Lead Counsels' 25% fee request ($787,500.00).  Lead Counsel devoted over 6618 hours to this Action, amounting to $3,727,285.50 in billable time.  Lead Counsel Decl., ¶ 139; *see also* King Decl., Ex. C-1; Abadou Decl., Ex. D-1.   The accompanying Abadou and King Declarations also set forth the billing rates utilized by Lead Counsel in calculating its lodestar.

Courts in this Circuit often award multipliers in the 1-4 range, Lead Counsel respectfully submits that the lodestar cross-check underscores the reasonableness of its fee application because it reflects a lodestar **deflator** of approximately 0.20.  *See, e.g.*, *In re Skilled Healthcare Grp, Inc. Sec. Litig.*, 2011 WL 280991, at *5 (C.D. Cal. Jan. 26, 2011) (awarding 25% fee, which "represents more than a twenty-five percent reduction from its lodestar"); *Buccellato*, 2011 U.S. Dist. LEXIS 85699, at *3-4 (awarding a multiplier of 4.3); *In re Brocade Sec. Litig.*, Consolidated Case No. 05-CV-02042-CRB, slip op at 13 (N.D. Cal. Jan. 26, 2009) (awarding 25% fee representing a multiplier of 3.5); *In re Veritas Software Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 30880, at *42 (N.D. Cal. Nov. 15, 2005) (applying 4.0 multiplier where motion to dismiss was pending and no formal discovery taken).

"The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.…  But the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *Rite Aid*, 396 F.3d at 306-07 (citations omitted).  Here, the lodestar cross-check supports the requested award.

### C. Reaction Of The Class To The Settlement To Date

The reaction of the Class to a proposed settlement and fee request is a relevant factor in

approving fees. *See Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at *11-12 (N.D. Cal. Feb. 2, 2009); *Immune Response*, 497 F. Supp. 2d at 1177. Here, notice of the proposed Settlement has been mailed to over 41,500 potential Class Members and nominees, advising that Lead Counsel would be requesting an award of attorneys' fees not to exceed 25% of the Settlement Amount and reimbursement of expenses not to exceed $232,000, plus interest on such amounts, all to be paid from the Settlement Fund. *See* Lead Counsel Decl., ¶ 154; *see also* Miller Decl., Ex. A (Notice of Pendency and Proposed Settlement of Class Action), at § 17.

While the deadline for filing any objections to Lead Counsels' fee request does not expire until September 12, 2017, to date no Class Member has filed an objection to the maximum amount of attorneys' fees and expenses set forth in the Notice. *See* Lead Counsel Decl., ¶ 155; Miller Decl., ¶ 17; *see also Vict. Secret*, 2008 U.S. Dist. LEXIS 123546, at *48 ("the reaction of the class has been positive. Only three class members objected and only twenty-nine opted out. This indicates that counsel achieved a favorable result for the class, which in turn suggests that they are entitled to a generous fee."). This favorable reaction further reinforces the reasonableness of the requested amount of fee and expenses.

## IV.    REIMBURSEMENT OF LITIGATION EXPENSES

Lead Counsel and Plaintiffs' counsel also request reimbursement of litigation expenses in the amount of $228,384.59 incurred in connection with the prosecution and resolution of the Action on behalf of the Class, plus interest on such amount at the same rate as earned by the Settlement Fund. *See* Lead Counsel Decl., ¶¶ 157-166. Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action. *See OmniVision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (same).

From the beginning of the case, Lead Counsel was aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the Action was

successfully resolved.   Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds advanced to prosecute the Action.   Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  Lead Counsel Decl., ¶ 158.

The types of expenses that Lead Counsel seeks reimbursement for are necessarily incurred in litigation and routinely charged to clients billed by the hour.  *Id.* ¶ 165.  As set forth in the sworn declarations submitted by Lead Counsel, these expenses include, among others, court fees, service of process, experts and consultant fees, mediation costs, online legal and factual research, travel costs, reproduction costs, and messenger, courier and overnight mail.  *Id.* ¶¶ 159-166.   These expense items are billed separately by Lead Counsel, and such charges are not duplicated in their billing rates.  *See* Abadou Decl., ¶ 6; King Decl., ¶ 6.

Lead Counsel directly incurred expenses to pay, *inter alia*: (i) experts, consultants, and other similar contract services (*i.e.*, $148,442.00, or approximately 65% of the total amount of expense); (ii) online legal and factual research vital to Lead Plaintiff's investigation and analysis of the Class's claims (*i.e.*, $35,195.35, or approximately 15% of the total amount of expense); and (iii) the mediation process (*i.e.*, $14,419.45, or approximately 6% of the total amount of expense); and (iv) travel and lodging (*i.e.*, $12,310.00 or approximately 5% of the total amount of expense).  Lead Counsel Decl., ¶¶ 159-165; *see also* King Decl., Ex. C-2; Abadou Decl., Ex. D-2.  These expenses were critical to Lead Counsels' success in achieving the Settlement.  Lead Counsel Decl., ¶ 166. To date, no objections have been received regarding the maximum expense number set forth in the Notice or to the maximum claims administration costs.  *See* Miller Decl., ¶ 17.  Accordingly, Lead Counsel respectfully requests reimbursement of Lead Counsel's expenses, plus interest.

## V.   LEAD PLAINTIFF PATRICK BROWDER SHOULD BE AWARDED HIS REASONABLE COSTS AND EXPENSES

Lead Plaintiff Patrick Browder also seeks reimbursement of $5,769.00 for the costs and expenses incurred by him in connection with his representation of the Class.   The PSLRA

- 14 -

Case No. 4:14-CV-03998-PJH (JCS)

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be granted to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).  As required by the PSLRA, Lead Plaintiff's claims for reimbursement of expenses are based upon the time that he devoted to the Action, including reviewing pleadings and preparing for and sitting for a class certification deposition.  *See* Browder Decl., ¶¶ 5-9.

Lead Plaintiff has actively and effectively fulfilled his obligations as a representative of the Class, complying with all of the many demands placed upon him, and providing valuable assistance to Lead Counsel.  As part of his oversight of, and participation in, this Action on behalf of the Class, Lead Plaintiff, among other things: (i) participated in meetings and correspondence with Lead Counsel; (ii) reviewed correspondence, memoranda and court filings; (iii) reviewed draft pleadings and briefs; (iv) prepared for and sat for a deposition, settlement negotiations and mediation and participated in lengthy discussions concerning the terms of the Settlement.  *See id.*; *see also Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *48 (activities such as "responding to discovery, preparing for, traveling to and attending their depositions and maintaining contact with Plaintiffs' counsel to monitor the litigation" support a finding that class representatives were "actively involved in every aspect of … litigation").

The Notice advises Class Members that Lead Plaintiff may seek reimbursement of his reasonable costs and expenses not to exceed $10,000.  To date, there have been no objections to this request.  Although Lead Plaintiff will share in the Net Settlement Fund in the same proportion as all Class Members, he may recover his reasonable expenses incurred as a result of activities undertaken on behalf, and directly related to his representation, of the Class.  The reimbursement sought by Lead Plaintiff is reasonable and fully justified under the PSLRA based on his involvement in the Action.  *See In re Mego*, 213 F.3d at 463 (affirming $5,000 reimbursement to class representative in securities class action).[8]

---

[8]     *See also Immune Response*, 497 F. Supp. 2d at 1173; *In re Infospace*, *Inc. Sec. Litig.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004).

## VI.    CONCLUSION

For the reasons set forth herein, Lead Counsel respectfully requests that the Court award: (i) attorneys' fees of 25% ($787,500.00) of the Settlement Fund, plus interest; (ii) reimbursement of $228,384.59 in expenses incurred by Lead Counsel in connection with the prosecution and resolution of this Action, plus interest; and (iii) reimbursement of $5,769.00 in costs and expenses incurred by Lead Plaintiff in connection with his representation of the Class.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER, LLP**

DATED:  August 28, 2017        By:   /s/ *Laurence D. King*
                                            Laurence D. King

Mario M. Choi
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:  415-772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
jstrauss@kaplanfox.com
dhall@kaplanfox.com

**KAHN SWICK & FOTI, LLP**

DATED:  August 28, 2017        By:   /s/ *Ramzi Abadou*
                                            Ramzi Abadou
912 Cole Street, #251
San Francisco, CA 94117
Telephone:  504-455-1400
Facsimile:  504-455-1498
ramzi.abadou@ksfcounsel.com

- 16 -                          Case No. 4:14-CV-03998-PJH (JCS)

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
Alexander Burns (admitted *pro hac vice*)
206 Covington Street
Madisonville, LA 70447
Telephone:  504-455-1400
Facsimile:  504-455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com

*Lead Counsel for Lead Plaintiffs*
*Oklahoma Firefighters Pension and Retirement System,*
*Browder Capital LLC, and Patrick Browder*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Mario M. Choi, attest that concurrence in the filing of this document has been obtained from the other signatories.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of August, 2017, at San Francisco, California.

                                                        /s/ *Mario M. Choi*
                                                        MARIO M. CHOI